# EVANS et al. v. OREGON SHORT LINE RAILROAD COMPANY.

No. 2103.    Decided April 29, 1910 (108 Pac. 638).

1. DEATH—DAMAGES—ADMISSIBILITY OF EVIDENCE. Under Comp. Laws 1907, sec. 2912, providing that in a death action such damages may be given as under all the circumstances may be just, in connection with evidence that decedent had contributed to his family for support and maintenance, the wife and children may also show his affection for them, his disposition and deportment towards them, his counsel and advice and his care and solicitude for their welfare, in so far as such things were made effective by his acts, as bearing on the amount of damages.    (Page 437.)

2. DEATH—ADMISSIBILITY OF EVIDENCE—CONDUCT OF DECEASED TOWARD FAMILY. That a ' physician testifying to decedent's kind treatment of his wife on specific instances did not come into daily contact with the husband and wife, and therefore was unable to testify to their daily conduct towards each other for a connected period of months or years, did not affect the admissibility of his testimony, but merely went to its weight.    (Page 437.)

3. APPEAL AND ERROR—OBJECTIONS BELOW—SUFFICIENCY. Where defendant in the lower court objected to evidence as not proper for any purpose, it could not on appeal urge an additional specific objection.    (Page 438.)

4. DEATH—ADMISSIBILITY OF EVIDENCE. Where a physician testifying to the physical condition of decedent's widow in a death action stated that "she has been an invalid for nearly four years and suffers from a paralytic stroke on her right side," his further statement that she is almost unable to help herself, has had to be taken care of ever since she was paralyzed, cannot do any housework to amount to anything, but goes around the house unable to do much because

she has lost the use of her right limb, though in form referring to her condition at the time of trial, in fact referred to such condition at a time prior to decedent's death.    (Page 438.)

5. DEATH—ACTION—ADMISSIBILITY OF EVIDENCE. In a death action for the benefit of decedent's widow and children under Comp. Laws 1907, sec. 2912, giving such damages as under all the circumstances may be just, evidence as to the poor physical condition of the widow, her inability to do housework, and the necessity for caring for her was admissible on the question of damages.1    (Page 440.)

6. TRIAL—REFUSAL OF REQUESTS—INSTRUCTIONS INCORRECT IN PART. It is not error to refuse a charge faulty in part.    (Page 443.)

7. DEATH—MEASURE OF DAMAGES—CONTRIBUTIONS OF DECEDENT TO FAMILY SUPPORT. If the true basis for recovery in a death action of what might be found that decedent would probably have contributed to his family, either for their support or as an addition to his estate, be the present value thereof, the discount should be made only from the time that it was found that such contributions would have been actually made had decedent lived, and not at the end of decedent's expectancy.    (Page 445.)

8. TRIAL—INSTRUCTIONS—BURDEN OF PROOF. Charges that it is the presumption of law that every man exercises due care for his own safety when in a place of danger, and the presumption is that decedent did so when he approached the crossing, and that plaintiffs need not affirmatively prove that decedent looked and listened for the train before coming upon the crossing, the presumption being that he did so, and that the burden of proof that he did not was on defendant and must be proved by a preponderance of the evidence, merely amounted to charges that the burden of proof upon the plea of contributory negligence was upon defendant, and, unless such negligence was established by a preponderance of the evidence, plaintiffs must prevail as to that issue, and did not place a presumption in the balance to be weighed by the jury against the evidence in support of defendant's plea of contributory negligence.    (Page 447.)

9. TRIAL—REFUSAL OF REQUESTS—REQUEST EMBRACED IN CHARGE GIVEN. It is not error to refuse a charge embraced in instructions given.    (Page 448.)

10. RAILROADS—CROSSING ACCIDENT—INSTRUCTIONS. In an action for the death of one killed at a railroad crossing, a charge that, though a railroad company may comply with the statutory requirements of ringing the bell or sounding the whistle in approaching a public crossing, yet it can nevertheless be negligent in failing to adopt

---

1 Spiking v. Con. Ry. & P. Co., 33 Utah, 339, 93 Pac. 847; Pool v. Southern Pac. Ry. Co., 7 Utah, 303, 26 Pac. 654.

such other reasonable measures for public safety as common prudence may dictate, considering the danger, travel, and surrounding circumstances, was not erroneous as authorizing the jury to speculate and base a verdict upon anything which in their judgment defendant ought to have done or omitted to do to prevent accidents at the crossing, where the court also charged that, before plaintiffs could recover, they should satisfy the jury by a preponderance of the evidence that some one of the negligent acts alleged in the complaint caused decedent's death, and, if they were so satisfied, their verdict should be for plaintiffs, unless they found that defendant had established its defense of contributory negligence, but simply stated an abstract proposition of law and gave a general definition of negligence.   (Page 449.)

11. APPEAL AND ERROR—REVIEW—INSTRUCTIONS.    That instructions are long, and to some extent repeated, and hence to that extent unnecessary, will not affect the verdict or judgment otherwise without prejudicial error.   (Page 449.)

Appeal from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by Samuel R. Evans, and another administrator of Jesse J. Price, against the Oregon Short Line Railroad Company.

Judgment for plaintiffs.   Defendant appeals.

AFFIRMED.

*P. L. Williams, Geo. H. Smith* and *F. K. Nebeker* for appellant.

*Powers & Marioneaux* and *Geo. Q. Rich* for respondents.

APPELLANT'S POINTS.

This court has uniformly held that the pecuniary loss arising from various elements of damage, is the sole measure of the damages recoverable in such an action as this.   (*Webb v. D. & R. G. R. R. Co.,* 7 U. 17; *Chilton v. U. P. R. R. Co.,* 8 Utah, 47; *Corbett v. O. S. L. R. R. Co.,* 25 Utah, 449;

37 Utah—28

*Beeman v. Martha Washington Co.,* 23 Utah, 139.)   The office of a presumption is simply to serve until evidence of the fact which the presumption supposes is adduced.   (Elliott on Evidence, sec. 91; *Golinvaux v. Burlington C. R. & N. R. Co.,* 101 N. W. [Ia.], 465, 467; *Waldron v. Boston & M. R.,* 62 Atl. [N. H.] 443; *Mynning v. Detroit L. & N. R. Co.,* 35 N. W. [Mich.] 811, 812; *Reed v. Queen Anne's R. Co.,* 57 Atl. [Del.] 529-532; *Winter v. Knights of Pythias,* 69 S. W. [Mo.] 662; *Burk v. Walsh,* 92 N. W. [Ia.] 65, 66; *Keller v. Over et al.,* 20 Atl. [Pa.] 25; *Meyers v. Kansas City,* 18 S. W. [Mo.] 914.)   It is incumbent upon a traveler to exercise such care as to make the act of looking and listening reasonably effective.   (*Washington, etc., R. Co. v. Lacey,* 94 Va. 460, 26 S. E. 834, 839; *McCanna v. New Eng., etc.,* R. Co., 2 R. I. 439, 39 Atl. 891-892; *Comkling v. Erie R. Co.,* 63 N. J. Law, 338, 43 Atl. 666; *Schomolze v. Chicago, etc., R. Co.,* 83 Wis. 659, 53 N. W. 743, 54 N. W. 106; *Urias v. Pa. R. Co.,* 152 Pa. St. 326, 25 Atl. 566.)

### RESPONDENTS' POINTS.

The right of the wife to the society and protection of the husband, and the right of the husband to the society and services of the wife are regarded as the property of the respective parties.   (*Warren v. Warren,* 89 Mich. 123; *Spiking v. Consolidated Railway & Power Co.,* 33 Utah, 339, 93 Pac. 847; *Redfield v. Oakland C. S. Ry. Co.,* 110 Cal. 277; *Denver, etc., Tramway Co. v. Tiley* (Colo.), 59 Pac. 476; *C. St. L. & T. R. Co. v. Johnson,* 78 Tex. 536; *Furnish v. N. P. R. Co.,* 102 Mo. 669.)   The damages awarded were not excessive.   (*Sternfels v. Met. Street Railway Co.,* 77 N. Y. Supp. 309, 174 N. Y. 562; *Lane v. Brooklyn Heights R. R. Co.,* 85 App. Div. [N. Y.], p. 85, 82 N. Y. Supp. 1057, 178 N. Y. 623; *International & G. N. R. Co. v. McVey* [Tex.], 81 S. W. 991, 85 S. W. 34; *Texas Loan Agency v. Flemming* [Tex.], 46 S. W. 63; *Galveston H. & S. A. Ry. Co. v. Davis* [Tex.], 65 S. W. 217; *Louisville & N. R. Co. v. Shibell's Adm.*

[Ky.], 18 S. W. 944; *Galveston H. & S. A. Ry. Co. v. Perry* [Tex.], 85 S. W. 62; *Chesapeake, O. & S. W. R. Co. v. Hendricks* [Tenn.], 13 S. W. 696; *Ericius v. Brooklyn Heights R. Co.,* 71 N. Y. S. 596; *Reilly v. Brooklyn Heights R. Co.,* 72 N. Y. S. 1080; *Ft. Worth & R. G. Ry. Co. v. Kime* [Tex.], 51 S. W. 558; *E. L. & R. R. Ry. Co. v. Smith,* 65 Tex. 167; *Chesapeake & O. Ry. Co. v. Dickerson's Adm.,* [Ky.], S. W. 615.) This court had held that in determining the amount of damages for death by wrongful act it is proper for the jury to consider the number and ages of the members of decedent's family, the loss of his society and companionship, his habits in regard to supporting his family and what he might be expected to do in the future, expressly excluding mere mental suffering. (*Pool v. S. P. Co.,* 7 Utah, 303, 26 Pac. 654; *Webb v. D. & R. G. Ry.,* 7 Utah, 17, 24, Pac. 616; *Wells v. D. & R. G. Ry. Co.,* 7 Utah, 482, 27 Pac. 688; *Chilton v. U. P. Ry.,* 8 Utah, 47, 29 Pac. 963; *Corbett v. O. S. L.,* 25 Utah, 449, 71 Pac. 1065; *Hyde v. U. P. Ry. Co.,* 7 Utah, 356, 26 Pac. 979; *Beaman v. Martha Washington Co.,* 23 U. 139, 63 Pac. 631; *Rogers v. R. G. W. Co.,* 90 Pac. 1075; *Spiking v. Consolidated Ry. & Power Co.,* 93 Pac. 847.)

FRICK, J.

This is an action by respondents, as administrators of the estate of one Jesse J. Price, deceased, to recover damages which it is alleged resulted from his death to his surviving widow and eight minor children, for whose benefit the action was prosecuted. Jesse J. Price was killed on the 19th day of September, 1907, in a collision with a passenger train of appellant while attempting to cross its railroad track with a team and wagon at a public road crossing in the town of Richmond, Cache County, this state, and it is alleged that the collision and death of said Price was caused by the negligence of the appellant. The alleged acts of negligence, briefly stated, are: (1) Excessive speed of the train; (2) failure to keep a proper lookout before reaching the crossing by defendant's servants; (3) permitting weeds, willows, and

other obstructions to grow and remain on appellant's right of way at or near a public crossing; and (4) failure to sound the bell, blow the whistle, or give any other warning of the approach of the train. The case was submitted to a jury, who returned a verdict for respondents in the sum of $15,300. The court entered judgment on the verdict, from which this appeal is prosecuted.

While the errors assigned are numerous, we shall only consider those that are relied on and are argued in the brief of appellant's counsel. In order to avoid repetition, we shall state the facts, so far as deemed necessary, in connection with the discussion of the several assignments. Appellant asserts that the court erred in admitting certain evidence respecting the relations existing between the deceased and his wife, one of the beneficiaries of this action, as testified to by the family physician of the deceased as the physician had observed the decedent's conduct some nine or ten months preceding his death. The substance of the evidence, which is correctly stated by counsel for appellant in their brief, is as follows:  "I observed that Mr. Price's treatment of his wife was most kind—beyond the average. He had to help dress her and attend to her. He attended to her as a trained nurse would have done. I have never seen a man who would attend to a woman as kindly and as well as he did. He assisted to dress her, and during the confinement, he gave me every assistance a man could. Mr. Price was a perfect specimen of manhood. He was robust, healthy, and strong. He was a well preserved man in every way." The contention is that this evidence should have been excluded upon the objection of counsel, which was upon the ground that the evidence is "immaterial, incompetent, and irrelevant." We think otherwise. Section 2912 of the Compiled Laws of the State of Utah of 1907, upon which this action is based, so far as material to the particular objection now under consideration, reads as follows: "In every action under this and the preceding section such damages may be given *as under all the circumstances of the case may be just.*" (Italics ours.) The question, therefore,

is not merely whether a wife has lost a husband or a child a father, who in a mechanical way provided for their support from his earnings or other means. We think that, in connection with the evidence showing what the deceased has contributed to the family for support and maintenance, the wife and children may also show the affection the deceased entertained for them, his disposition and deportment toward them, his counsel and advice, and his care and kindly solicitude for their welfare in so far as these things were made effective by his acts, and that the jury may consider all these things in connection with the evidence of the amount the deceased contributed for support, as aforesaid, in arriving at the amount which the widow and minor children shall receive as compensation for the injury sustained by them by reason of the death of the husband and father. We are of the opinion, therefore, that the court committed no error in overruling the objection and in admitting the evidence referred to.

It is, however, urged that the evidence was irrelevant and improper in any event, because the doctor's testimony referred to a specific instance or act relative to the deportment and disposition of the deceased, and to a time long prior to his death. The objection as stated above, however, was hardly broad enough to challenge the attention of either opposing counsel or court to this precise point. Assuming, however, for the purposes of this decision, that the objection was sufficiently broad, we are still of the opinion that the evidence was properly admitted. This objection, in any event, goes to the weight of the evidence rather than to its competency. There is no other way by which the decedent's affection, conduct, and treatment of his family could have been shown except as it was done, and the mere fact that the doctor did not come into daily contact with the husband and wife and was thus unable to testify to their daily conduct toward each other for a connected period of months or years in no way affected the admissibility of the testimony.

The next error assigned by appellant is very closely related to the one just discussed. This assignment relates to the admission of evidence relative to the physical condition of the widow of the deceased. The objection made to this evidence as disclosed by the record is "that it is not a proper element of damages." The court overruled the objection, and counsel saved an exception. The testimony given by a Mrs. Dent in brief is as follows: "Well, she is almost unable to help herself. She has had to be taken care of ever since she was paralyzed. Now she can't do any housework to amount to anything. She goes around the house and attempts to do some things, but not very much, because she has lost the use of her right limb." It is contended that the testimony should have been excluded upon the grounds: (1) Because it is not proper for any purpose; and (2) because the witness in describing the widow's physical condition did not limit her statement to a time anterior to the death of the deceased. A conclusive answer to the second ground of objection is that it is unavailing because this specific ground of objection was not stated at the time of trial, but the general objection that we have given only was interposed. If counsel at the time had called the attention of court and opposing counsel to the fact that the question did not limit the testimony to any particular time, no doubt the question would have been so framed as to obviate this objection, and, if the objection could not have been obviated and the court had nevertheless admitted the evidence over the specific objection, the ruling could then have been reviewed with fairness and justice to all concerned. In view of the state of the record and the nature and form of the objection, this may not now be done. Another answer is that the witness, just before giving the testimony before quoted, in referring to the physical condition of the widow of the deceased, said: "She has been an invalid for nearly four years, and suffers from a paralytic stroke on her right side." It is apparent, therefore, that, while the statement of the witness as a matter of form referred to the wife's physical condition at the time of the trial,

the witness nevertheless, in fact, referred to such condition at a time long prior to the death of the deceased. For these reasons the second ground of objection cannot be sustained.

Recurring now to the first ground of objection, it must be conceded that upon this point the authorities are in conflict. If, however, the cases are critically examined, and the statutes on which the decisions are based are kept in mind, the conflict among the courts will be found to be more apparent than real. In those jurisdictions where statutes like ours, or of similar import, are in force, it will be found that the courts with few exceptions, if any, have held evidence of the character now under consideration admissible and proper to be considered by the jury in determining the amount of damages to be allowed by them. The identical question was before the Supreme Court of California in the case of *Cook v. Clay Street Hill R. R. Co.*, 60 Cal. 609. That court held that under the provisions of the statute which we have quoted evidence of the physical condition of the wife is proper. Indeed, we cannot well see how any court can logically arrive at a different conclusion, unless the peculiar provisions of our statute are disregarded. The statute clearly implies that, in order to arrive at the real injury the wife or the minor children have sustained, the jury should be adivsed of just what they received from the deceased by way of pecuniary aid and assistance, and also what they received from him by way of comfort, advice, and companionship. The statute seems to contemplate that a husband is not necessarily an automaton who responds to the wants of his wife and minor children in a mechanical way merely, and does no more for them than to provide for their support and maintenance. Again, it seems to be assumed in the statute that the actual disposition and inclination of men differ, and that this difference is made manifest in their family relations. One husband and father may be of great comfort to his wife and minor children, and his society and advice may be of much benefit to them, while another man may render to his family but little, if anything, in this regard, yet both may provide money, or the means of support, in the same amount

and to the same extent to their respective families. It is no doubt for this reason that the statute provides that in each case "such damages may be given as under all the circumstances may be just." If all cases were to be treated alike, and the damages were to be limited strictly to the mere pecuniary value of the loss of support and maintenance, the language of the statute, no doubt, would have been framed in accordance with the statute of Illinois, which, as we shall see, limits the recovery strictly to the pecuniary value of the loss of support sustained by the wife and minor children. True, the loss under our statute in a large sense is a pecuniary loss merely, since nothing can be recovered by way of solace for injured feelings or for mental suffering of the family by reason of the death of the husband and father. Whatever is allowed by the jury must therefore be by way of pecuniary recompense for the loss sustained by the wife and minor children, and must be strictly limited (1) to what the evidence shows the deceased contributed, and thus would probably have continued to contribute to them in money or other means by way of support and as an accumulation to his estate; and (2) to the money value of the injury suffered by the wife and minor children by reason of the loss of the advice, comfort, and society which they enjoyed prior to the death of the deceased and which would have been continued for their benefit. If the evidence is to the effect that the widow and minor children suffered no loss upon the first ground because the deceased provided neither money nor other means of support, they still may be entitled to something upon the second ground, because the society of the deceased may have been a comfort and his advice of material assistance to them. Again, a wife and children may have lost little or nothing upon either or both grounds, and the jury should then compensate them only for what they have lost, and, in case they have lost upon both grounds, they should receive compensation to the extent of their loss. The jury should be informed that any allowance they may make must be limited to what the wife and children received from the deceased upon either one or both

grounds to which we have referred, and the jury should be admonished that in no event can the pecuniary necessities or the physical requirements of the wife or children be considered for the purpose of enhancing the damages which are caused by the negligent acts complained of. In a very late California case involving death by wrongful act, namely, *Evarts v. Santa Barbara, etc., Co.,* 8 Cal. App. 712, 86 Pac. 830, evidence of the health and physical condition of the widow was admitted seemingly without objection, and was considered as proper by the appellate court. In California the question that the health and physical condition of the dependent beneficiaries as well as the question that the real relation of husband and wife and his affection for and deportment toward, or treatment of his family, may be considered as elements of damage, seem to be settled in favor of permitting those things to be shown. As additional cases where some phase of the foregoing questions have been considered and passed on by the Supreme Court of California, we refer to the following: *Dyas v. Southern Pacific Ry. Co.,* 140 Cal. 308, 73 Pac. 972; *Beeson v. Green Mountain, etc., Co.,* 57 Cal. 37; *Redfield v. Oakland C. S. Ry. Co.,* 110 Cal. 277, 42 Pac. 822, 1063; *Keast v. Santa, etc., Co.,* 136 Cal. 260, 68 Pac. 771. The question has also been considered and the view of the California Supreme Court sustained by the courts of other states, as appears from the following cases: *Hunt v. Connor,* 26 Ind. App. 41, 59 N. E. 50; *Hamann v. Milwaukee Bridge Co.,* 136 Wis. 39, 116 N. W. 854; *Baltimore & O. Ry. Co. v. Noell,* 32 Grat. [Va.], 394; *Mathews v. Warner,* 29 Grat. [Va.] 570, 26 Am. Rep. 396; *Merchants', etc., Co. v. Burns,* 96 Tex. 580, 74 S. W. 758. In *Spiking v. Con. Ry. & P. Co.,* 33 Utah, 339, 93 Pac. 847, this court in effect held to the doctrine announced in the foregoing cases in so far as that doctrine relates to the elements that may be considered by the jury in determining the amount of damages to be allowed, although the precise question now considered was not before us nor passed on. The same may also be substantially said with respect to the case of *Pool v. Southern Pacific Ry. Co.,* 7 Utah, 303, 26

Pac. 654. The Virginia Supreme Court of Appeals, under a statute no broader than ours, as appears from the foregoing cases, carries the doctrine even farther, and permits a recovery by way of solace for injured feelings. No other court, so far as we know, however, goes to this extent. It should be stated, however, that under the Virginia statute $10,000 is the limit of recovery. In Indiana, as appears from the cases referred to, and other cases there cited, in addition to a recovery for the value of the daily contributions for support made by the deceased, his wife and children may also recover for "the value of his personal services in the superintendence and care of his family, the education of his children, and the performance of acts of paternal assistance to which he would be legally obligated and which might be reasonably expected." It may also be shown "that one of the children of the deceased is afflicted with a permanent disability." In the cases which we have cited others are referred to as supporting the doctrine we here invoke, but we shall not refer specially to those cases.

Appellant has also referred us to cases which hold that evidence of the health or physical condition of the wife or child is not relevant to any issue, and hence not admissible for any purpose. One of the leading cases cited by counsel is *Chicago, etc., Ry. Co. v. Woolridge,* 174 Ill. 330, 51 N. E. 701, 13 A. & E. R. R. cases (N. S. ) 501, in which the other Illinois cases are cited, and to which we shall make no separate reference. The Illinois cases, are however, all based upon a statute which the Supreme Court of Illinois has held strictly limits the recovery in cases of death through negligence to the money value of the loss of support and maintenance. The Illinois cases, as well as all others that are based on similar statutes, are therefore not of controlling influence under a statute like ours. The case of *Seattle, etc., Co. v. Hartless,* 144 Fed. 379, 75 C. C. A. 317, is, however, based upon a statute similar to ours, but notwithstanding that fact the Illinois cases are followed by the Federal Court of Appeals of the Ninth Circuit, as appears from the case just referred to. In the Hartless Case, *supra,* the following cases are cited, none of which sustains

the ruling in that case. *Alabama G. S. R. Co. v. Carroll,* 84 Fed. 772, 28 C. C. A. 207, was an action for personal injury. The action was prosecuted by the injured person, and it was held that evidence of his poverty was immaterial and inadmissible. *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Mich. 204; *National Biscuit Co. v. Nolan,* 138 Fed. 6, 70 C. C. A. 436, and *Pennsylvania Co. v. Roy,* 102 U. S. 456, 26 L. Ed. 141, also cited in the Hartless case, were all cases involving actions for personal injuries which were prosecuted by the injured persons to recover the damages sustained by reason of injuries inflicted upon them. In all those cases it was in substance held that neither the family relations nor the financial condition of the injured person was relevant or material. This, no doubt, is sound doctrine. One cannot well see how the injured person's financial straits could have any effect upon the damages he may have sustained by reason of the injuries inflicted upon him. Nor are the members of his family before the court, or entitled to consideration, in such an action. Whether his family be large or small, or whether he has one, is entirely immaterial in determining the amount of damages he should be allowed for the injuries he has sustained either to his person or to his business, or otherwise. The other cases cited by the court in the Hartless case, *supra,* have no bearing upon the question now under consideration whatever. All that is decided in them is that improper evidence admitted upon a material issue tried to a jury ordinarily is sufficient ground for reversal. Under statutes like ours, we think the weight of authority is clearly in accordance with the ruling of the trial court. This assignment therefore must be overruled.

If the foregoing conclusions with respect to what constitutes proper elements of damages are sound, then the next assignment, namely, that the court erred in giving the instruction on the measure of damages, must also be determined against appellant's contention. The instruction complained of is very long and substantially conforms to the views hereinbefore expressed. In

view that we have already substantially covered the subject no further comment is necessary.

It is also asserted that the court erred in refusing to charge the jury as requested by appellant in its request No. 11. In view that appellant's counsel specially rely upon this request we give it in full. The request is as follows: "In determining the amount of damages, if any, in a case like this, with reference to the earning capacity of the deceased, the jury will understand that the calculation is not to be made upon the basis of the total amount of probable earnings, but only upon such portion of these earnings as would probably have gone to the benefit of the plaintiffs in this case if the deceased had lived and acquired such earnings, but, when you determine what percentage or proportion of the probable earnings would have gone to the benefit of these plaintiffs, you have no right to award them in your verdict now the sum total that such proportion would amount to at the end of deceased's expectancy. All that the plaintiffs would be entitled to in the verdict so far as his future earnings and contributions go to constitute damages would be the present value of what would amount to such total sum at the end of such expectancy. You will consider all the evidence in the case to determine what such present value would be, and you must not award anything in excess of such present value. The measure of damages for the loss of human life, resulting from negligence, so far as future earnings and contributions go to constitute damages, is the present value of the contributions made by the deceased to the beneficiaries, ascertained by deducting the cost of his living and expenditures, from the net income, and no more can be allowed than the present worth of accumulations arising from such net income, based upon the expectancy of life. That is, having ascertained the total sum, its payment must be anticipated and capitalized, and no more than the present worth thereof can be awarded in damages." That this instruction fails to include all the elements that the jury may consider in determining the amount to be allowed under our statute we think is already made clear. The principal

contention, however, is that the court erred in refusing the instruction upon the ground that it is the only direction to the jury limiting the amount of the recovery to the present value of what the jury may find that the deceased would probably have contributed to his family either for their support or as an addition to his estate. If we should concede that the present value rule should be taken as the true basis, as urged by counsel, yet the court did not err in refusing the particular instruction, because, as we have seen, it was faulty in other respects; but the instruction was properly refused, even though the present value rule were to be rigorously enforced, as an analysis of the instruction will demonstrate. With regard to the probable contributions to the beneficiaries by the deceased out of his probable earnings, the court in the request is asked to charge the jury that they should take the total sum of such contributions as if made at the end of the deceased's expectancy of life, and then calculate the present value or such total sum. It is evident that under any circumstances, such a rule would not be a correct measure of damages, but the discount should be made only from the time that it is found that such contributions would have been actually made by the deceased to the beneficiaries had he lived. For example, if the jury found that out of the earnings of the deceased he would have contributed to the beneficiaries an annuity of one hundred dollars from the time of his death for thirty years thereafter (the probable period of life), the present worth of such an annuity, payable at the end of each year for a period of thirty years, discounted at the rate of five per cent. per annum compound interest would be substantially the sum of $1537.20; while, if the jury were to follow the instruction requested and they had assumed such contributions to amount to $3000 payable at the end of thirty years expectancy, the present worth of such sum of $3000 so payable, discounted at the same rate before stated, would amount to only $693. In the foregoing illustration the contributions are assumed to be made annually by the deceased to his family. In actual family life all know that the contributions by the

husband and father (except the accumulations to his estate) are made either daily, weekly, or, at least, monthly. But, in addition to such contributions, the husband and father may, and usually does, render assistance to his family in other ways than by merely making contributions in money for which the family, in case of his death, is entitled to be compensated, and the amount they should receive therefor is usually a matter which to a large extent at least must be left to the jury. In view of the complications which arise in such cases, it is apparent why some courts have refused to adopt the mathematical present value rule. In view of the foregoing, it follows that it becomes unnecessary to pass upon the question whether in this jurisdiction, in view of the provisions of our statute, the present value theory should prevail or not, and we do not pass upon that question.

We are not unmindful of appellant's contention that the large amount allowed by the jury in this case is probably attributable to the admission of the evidence objected to, the instruction on the measure of damages complained of, and the failure of the court to limit the recovery to the present value of whatever pecuniary contributions the deceased would probably have made for the benefit of his family. Even if counsel's theories were correct, these things, for the reasons we have stated, could not legally affect the verdict and judgment. But the amount allowed by the jury (which we fully concede is quite large) can readily be accounted for upon all the facts and circumstances that were before the jury upon the question of damages. While the earnings of the deceased and his savings up to the time of his death were perhaps not extraordinary, yet, in view that he was in the very prime of life, that he was a man of frugal and temperate habits, his splendid physical health, his past experience, his general conduct towards his whole family, and his ministrations, advice, and assistance to them when either sick or well, as disclosed by the evidence, makes this case an exceptional one in so far as the amount of damages is concerned. In our opinion the explanation of the large sum allowed is to be found in the things that we have just

enumerated rather than in the grounds assigned by counsel as aforesaid.

Appellant also insists that the court erred in giving the following portions of instructions, to wit: "It is the presumption of law that every man exercises due care for his own safety when in a place of danger, and the presumption is that the deceased did so when he approached the crossing." And, further, the following: "The court instructs the jury that the plaintiffs need not affirmatively prove that the deceased looked and listened for the train before coming upon the crossing. The presumption is that he did so, and the burden of proof that he did not is on the defendant railway company, and it must be proved by a preponderance of the evidence." It is conceded by counsel for appellant that those excerpts, in the absence of all evidence, do correctly state an abstract rule or proposition of law, but it is urged that it was error to give them in this case, because there were eye-witnesses to what occurred just before and at the time of the collision, and hence, it is contended, there was nothing left upon which a legal presumption could operate. It is further strenuously insisted that in view that appellant in its answer set up and relied on the plea of contributory negligence, and since the evidence upon that plea was before the jury, therefore the respondents could not be permitted to throw the presumption referred to in the instruction into the balance to be weighed by the jury against the evidence in support of appellant's plea of contributory negligence. Had the court done this by giving the instruction complained of, the contention of counsel would be sound. This is well illustrated by the authorities cited by counsel in support of their contention. But we are of the opinion that such was neither the intended nor the natural effect of the language used by the court in the two instructions quoted from above. What was said by the court was, in effect, no more than to call the jurors' attention to the fact that the burden of proof upon the plea of contributory negligence was upon appellant; and, unless such negligence was established by a pre-

ponderance of the evidence upon that subject, then the respondents must prevail as to that issue. Similar instructions were assailed in the same way in *Steele v. Northern Pacific Ry. Co.*, 21 Wash. 287-302, 57 Pac. 820, and in *Baltimore & O. Ry. Co. v. McKenzie*, 81 Va. 77. By referring to those cases, it will be seen that instructions given in the manner and form as those complained of do not come within the objection passed on in the cases referred to by counsel for appellant. We are of the opinion, therefore, that this assignment should be overruled.

The criticism with respect to the tenth instruction is in our judgment without merit. The construction that counsel seemingly place upon that instruction is entirely too narrow, and we are satisfied that the jury were not misled by the language used by the court.

Nor did the court err in refusing the defendant's request No. 8 with respect to the duty of deceased before attempting to cross the railroad track. The law upon this feature of the case was sufficiently and correctly stated in other instructions, and hence the court did not err in its refusal to give the particular request.

The next assignment relates to the giving of instruction No. 14. In this instruction the court, in substance, told the jury that, although a railroad company may comply with the statutory requirements of ringing the bell or sounding the whistle in approaching a public crossing, yet it may nevertheless be guilty of negligence "in failing to adopt such other reasonable measures for public safety as common prudence may dictate considering the danger, travel, and surrounding circumstances." It is contended that, by this instruction, the court authorized the jury to speculate and base a verdict upon anything which in their judgment the appellant ought to have done, or omitted to do, in order to prevent this or other accidents at the particular crossing in question. We cannot assent to this contention. The court had in another instruction told the jury in explicit terms that, "before plaintiffs can recover, the plaintiffs must satisfy you by a preponderance of the evidence that some one of the negligent

acts alleged in the complaint caused the death of Mr. Price. If you are so satisfied by a preponderance of the evidence, then your verdict should be for the plaintiffs, unless you find that the defendant has established its defense of negligence upon the part of the deceased." All of the instructions must be considered together, and, when so considered, it is manifest that the criticism of counsel is really without merit. The instruction complained of, therefore, simply and correctly stated an abstract proposition of law, and gave a general definition of what would constitute negligence. The jury must have understood that their verdict must be based upon one or more of the acts of negligence charged in the complaint, all of which were also set forth in the instructions, and their attention was especially directed to them as we have shown. It may be true that it was not necessary to give the instruction in question, but it is likewise true that it was not necessary to give quite a number of instructions which were given at the instance of both parties, some of which we have alluded to and others we have not. The instructions are very voluminous and cover every possible theory of both sides. Some of them are necessarily repetitions to some extent. It is apparent that the court gave many of the requests of counsel on both sides, and in that way some of the matters complained of crept into the record. The mere fact that instructions are long and to some extent repeated, and hence unnecessary, cannot be permitted to affect the verdict or judgment which is otherwise without prejudicial error. We are of the opinion that the jurors were not misled by anything that is contained in the instructions, nor do we think the respondents obtained any undue advantage or that the appellant was in any way prejudiced by anything that was omitted from the instructions.

The last assignment to be noticed relates to the refusal of the court to direct a verdict for appellant in accordance with its request. It is vigorously insisted that this case comes squarely within the principles laid down by the majority of

this court in *Wilkinson v. O. S. L. Ry.*, 35 Utah, 110, 99 Pac. 466. In that case, in the opinion of this court, the evidence admitted of but one conclusion, which was that, if the injured person had looked at all before entering upon the crossing, he would have seen the approaching engine, and hence easily could have avoided the collision and consequent injury to himself. It was a clear case, therefore, of contributory negligence on the part of the traveler, which, in the judgment of this court, was inexcusable as a matter of law. In view of this there was nothing to submit to the jury. In the case at bar we, however, cannot say as a matter of law that the deceased was guilty of negligence in attempting to cross the track in view of all the facts and circumstances involved. Nor can we say as a matter of law that he did not look nor listen for the approaching train before attempting to cross the track. There are many circumstances which enter into a consideration of the question of the negligence of the deceased which it was proper to submit to the jury. The case is one which it was not only proper to submit to the jury upon the evidence, but it belongs to that class which it would have been error, under all the circumstances, not to have so submitted.

The judgment therefore is affirmed, with costs to respondents.

McCARTY, J., and LEWIS, District Judge, concur.