BROSTROM et al. v. LYNCH-CANNON ENGINEERING
Co. et al.

No. 2697.   Decided April 21, 1915 (148 Pac. 423).

1.  APPEAL AND ERROR—VERDICT—CONCLUSIVENESS.   A verdict on conflicting evidence, and supported by some evidence, though weak, will not be disturbed on appeal. (Page 109.)

2.  MASTER AND SERVANT—DEATH OF SERVANT—NEGLIGENCE—INFERENCES.   Where an inference of the negligence of the employer, causing the death of an employee, arises from certain facts and circumstances, the inference may be strengthened by reason of the failure of the employer to offer any explanation of the cause of the accident.[1] (Page 110.)

3.  MASTER AND SERVANT—MISLEADING INSTRUCTIONS.   Where, in an action for the death of an employee, the court charged that there could be no recovery unless the jury found that decedent was working within the scope of his employment at the time of the accident, a charge that it was the duty of the employer to use reasonable care to keep the premises about which decedent

[1]*Christensen* v. *Railroad Co.*, 35 Utah 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159; *Richards* v. *O. S. L. R. Co.*, 41 Utah 99, 123 Pac. 933.

was employed in a reasonably safe condition was not objectionable as leading the jury to believe that the employer was liable, though the relation of master and servant, as to the particular work which decedent was doing at the time of the accident, did not exist. (Page 111.)

4. MASTER AND SERVANT—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE. An employee going on a scaffold prepared and intended for that purpose, and on which at least two employees were working at the time, is not guilty of contributory negligence, precluding a recovery for his death by the collapse of the scaffold. (Page 111.)

5. DEATH—ACTION FOR—DAMAGES—EXCESSIVE DAMAGES. Under Comp. Laws 1907, Section 2912, authorizing the jury, in an action for death, to award such damages as may be just, a verdict for $5,300 for the negligent death of a man sixty-one years old, leaving a widow and three adult children and four minor children, aged eighteen, fifteen, fourteen and eleven years, respectively, was not excessive, where decedent was sober and industrious and of excellent health, and earning at the time of his death $3.75 per day, and constanty employed for nine months in each year at a wage of between three dollars and four dollars per day.[2] (Page 112.)

Appeal from the District Court; Second District; *Hon. N. J. Harris*, Judge.

Action by Anna Brostrom and others against the Lynch-Cannon Engineering Company and another.

Judgment for plaintiffs. Defendants appeal.

AFFIRMED.

*Boyd, DeVine & Eccles* for appellants.

*E. A. Walton* for respondents.

FRICK, J.

The plaintiff Anna Brostrom, as widow of Niels Brostrom, deceased, and four other plaintiffs, to wit, Lavina Brostrom,

---

[2]*Evans* v. *O. S. L. R. Co.*, 37 Utah 431, 108 Pac. 638, Ann. Cas. 1912C, 259.

Walter Brostrom, Bernard Brostrom, and Blenda Brostrom, as minor children of said deceased and said Anna, brought this action against the defendants to recover damages for the death of said Niels Brostrom. After alleging the relationship of the plaintiffs to each other and to the deceased, and the corporate capacity of the defendants, the plaintiffs, in substance, alleged that on the 4th day of October, 1912, the Blacksmith Fork Light & Power Company, hereinafter called power company, as the owner, and the Lynch-Cannon Engineering Company, hereinafter styled engineering company, as contractor, were engaged in the construction of a certain brick building to be used as a power house by said power company; that on the date aforesaid the deceased was in the employ of said power company and said engineering company; that in said employment it was the duty of said deceased to mix and carry mortar to the brick masons who were working on said building, and while he was so employed, and while "in the act of carrying mortar across and over one of the scaffolds erected by said defendants, and while the said Niels Brostrom was performing the labor demanded of him by the defendants, the said scaffold, upon which the said Niels Brostrom, deceased, was passing, then and there gave way, and a board on the same broke, and the said Niels Brostrom, deceased, was then and there thrown from said scaffold" and fell about thirty feet upon an iron beam, by reason of which fall he sustained bodily injuries, from which he died on said day; that the defendants, and each of them, were careless and negligent in failing to provide said deceased with a reasonably safe place to work, and that they negligently and carelessly failed to construct a safe scaffold in that they failed to construct it of material of sufficient strength to bear the weight of the deceased, and that the defendants negligently failed to warn the deceased of the dangerous condition of said scaffold, and that by reason of said negligence and the death of said Brostrom, which was caused by said negligence, the plaintiffs suffered damages, etc. The defendants filed a joint answer, in which they admitted their corporate capacity, admitted that the deceased "was killed at the time and place alleged," admitted that the power company was the owner of

the building mentioned in the complaint, and that the engineering company constructed the same, admitted that the deceased was employed to assist in the construction of said building, but only as a mortar mixer. The defendants denied all other allegations of the complaint. For a further answer they averred that the deceased was employed merely to mix mortar, and that it was no part of his duty to carry the same to the masons working on said building, and therefore he had no occasion to, and was not required to, go upon the scaffold mentioned in the complaint; that said deceased, "while not in the performance of any work for which he was employed * * * entered said building and was passing over and along or upon the scaffolding thereof wholly voluntarily, and that while attempting to pass over and upon a part of said scaffold or platform, * * * and at a place where said deceased had no right to be, he carelessly and negligently attempted to use said scaffold and a board thereof, and that the same broke and fell," and that the injuries to said deceased were caused by falling from said scaffold, and without any fault on the part of the defendants. The defendants also pleaded a settlement and accord and satisfaction and release from the widow, to which she replied by confessing and avoiding it upon the ground of fraud, etc. A trial resulted in a verdict and judgment for all of the plaintiffs against both defendants, and they appeal.

At the conclusion of plaintiffs' evidence the defendants moved for a nonsuit, which was denied, and, at the conclusion of all the evidence, they moved for a directed verdict, which was also denied, and they now assign the court's ruling in that regard as error.

As an illustration of the divergent views entertained by counsel for the respective parties, we remark that upon the one hand counsel for the defendants insist "that, under the uncontroverted evidence, the motion for a directed verdict should have been granted," while counsel for plaintiffs. is convinced that not only should the judgment be affirmed but that the appeal is so clearly without merit "that a penalty ought to be added for the frivolity of the appeal." Under these circumstances, it is not likely that we shall succeed in

changing the judgment of either party. Be that as it may, however, we must assume the responsibility of determining what the result shall be. .                        ⁄

Two of· the principal grounds upon which both motions were based were: (1) That the plaintiffs had failed to prove any negligence on the part of the defendants, or either of them; and (2) that there was not sufficient evidence to authorize a finding that the deceased was employed to carry mortar to the masons working on the scaffold, but that, upon the contrary, the evidence was to the effect that in carrying the mortar, and in going upon the scaffold, he was acting beyond the scope of his employment, and hence defendants did not owe him the duty of providing a reasonably safe scaffold to go upon. It is at least tacitly conceded that there were perhaps some facts produced in evidence from which the jury could infer negligence, and from which they might also infer that the deceased, if not directly, yet that he was impliedly, employed to carry the mortar to the masons working upon the scaffold at the time of the accident. What we have just said is made apparent from the motion for a directed verdict. Counsel based that motion, stating it in their own language, upon the ground that:

"There is only    *   *   *    an inference of employment for the particular purpose in which the deceased was employed at the time, to wit, in carrying mortar,   *   *   *   and that there is absolutely no evidence that he was employed for that purpose, except by inference, and that inference has been overcome by the absolute, positive, and uncontradicted testimony on the part of the defendants; further that there is no evidence of negligence upon the part of the defendant companies, except possibly by some inference, and that such inference, if it be indulged in, is entirely overcome by the absolute, positive and. uncontradicted evidence on· the part of the defendants."

In view of counsel's contention that there is not sufficient evidence to justify a finding that the deceased, at the time of the accident, was employed by the defendants to carry mortar, and that in doing that work he acted beyond the scope of his employment, we have taken the pains to carefully read all

the evidence produced at the trial, all of which is preserved
in a bill of exceptions.  After reading the evidence, we are
forced to the conclusion that, from all the facts and cir-
cumstances before the jury, they were authorized to find that
the deceased was not acting beyond the scope of his employ-
ment in carrying the mortar to the masons.  It is impractical
to set forth in detail all the evidence bearing upon that sub-
ject.  It must suffice to say that at the trial it was frankly
admitted by the manager or superintendent of the defend-
ants, who was in charge of the building operations, that at
the time of the accident the workmen were all engaged in
completing the building, and, in furtherance of that object,
some of them were doing one thing and some another, so that
but very few were directly engaged in the particular line
of work in which they had been engaged during the actual
construction of the building.  So far as the deceased was con-
cerned, assuming that he was employed as a mortar mixer
only, yet he had mixed and prepared all the mortar that was
needed to complete the building, but it had not all been dis-
tributed to the masons, and could not be, except as they needed
it to fully complete the walls by filling in the so-called put-
lock holes which were left by removing certain portions of
the scaffold which extended into the brick walls.  Under the
supervision of the superintendent, some at least of the mor-
tar carriers were engaged in taking down scaffolds, and the
deceased was thus, impliedly at least, authorized to carry,
and did carry, mortar to the masons, and in doing so was
required to pass onto and over the scaffold upon which was
the board that broke.  To carry the mortar, apparently, was
the only way it could be brought to the masons, who were still
working on the scaffold filling up the putlock holes, as afore-
said.  The jury, therefore, were authorized to infer from the
superintendent's own statement that the different workmen
employed at and about the building not only had a perfect
right to do what was necessary to be done in order to complete
the same, but that it was really expected of them, and the de-
ceased was no exception to the rule.  It might just as well be
contended that, because one of the mortar carriers had been
injured through the defendants' negligence in taking down

a scaffold, he could not recover, because he was not expressly told to do that, and hence was acting beyond the scope of his employment, which was to carry mortar and not to take down the scaffold.

Upon the question of defendants' negligence, the same conditions, practically, prevail. Here again the facts and circumstances are of that nature which authorizes conflicting inferences. The contention that there is no evidence of negligence, except the happening of the accident (that is, the deceased's fall and consequent injury) cannot prevail. The evidence is positive that the deceased was upon the scaffold and was passing mortar to two masons as they needed it to fill the putlock holes in the wall. He was but a few feet from both of them when he fell. One heard the sound of the breaking board, and, on turning his head, saw the deceased fall down between the two two-inch planks that were on this scaffold; and which were about three feet apart, and upon one of which the mason was working. He, in substance, testified that the deceased was in the act of falling, and was between two pieces of board, which had been apparently severed by breaking, and which were falling with him, one behind his body and the other in front of it. The board, the witness said, was broken, and was falling in the shape of a V; the deceased being between the pieces. He further said, that the lower ends of the two pieces of board were about two and one-half or three feet apart. The board which broke and fell with the deceased was one inch thick, while the scaffold floor, as originally laid, was composed of planks two inches thick. The jury, therefore, had a right to infer that a board of insufficient strength was used on the scaffold; that the deceased, while in the discharge of his duty, stepped upon it; and that it was too weak to sustain his weight, and broke, thereby causing him to fall down upon an iron beam which caused the injury, from which he, in a few hours thereafter died. From the fact that such a weak board was used, the jury could also infer negligence on the part of the defendants, whose duty it was to prepare and maintain the scaffolds so long as they were needed by the masons. It is true that the evidence of negligence is not strong, and the writer is free

to admit that if he were sitting as a juror, and were passing upon the weight of the evidence, he would be inclined to find that negligence had not been established by a preponderance of the evidence. We are, however, prohibited from weighing the evidence, and all we can do is to determine whether there is some substantial evidence, either direct or indirect, to support the finding. In our judgment there is at least some substantial evidence in support of the finding of the jury. That the evidence may be weak cannot change the result. We cannot interfere any more where the evidence is weak than we can where it is strong, so long as there is some substantial evidence to support the finding of the jury. The evidence is conclusive that it was the duty of the defendants to provide the scaffolds for the workmen who had occasion to go upon them in erecting the building. The evidence is also clear that the defendants undertook to perform that duty. The superintendent further testified that, at the time of the trial, there were at least some of the men who worked about the building and scaffold in question still in the employ of the defendants, yet no effort whatever seems to have been made to produce a witness who could have explained or have given some reason how or why the board which broke came to be placed on the scaffold.

Where an inference of negligence arises from certain facts and circumstances, the inference may be strengthened by reason of the failure to offer any explanation by those who are responsible for the conditions out of which the accident has arisen. The jury may have thought that, under all the circumstances, the duty was cast upon the defendants to offer some explanation with regard to how or why or **2** by whom the board was placed upon the scaffold. There were a large number of facts and circumstances which the jury had a right to consider in determining the question of negligence. In view, however, of the mass of evidence which we would have to refer to in order to make the fact self-apparent, we shall not attempt to go into detail, but content ourselves with the foregoing statements.

It is obvious from what has been said that the facts and circumstances of this case do not bring it within the rule an-

nounced in *Christensen* v. *Railroad Co.*, 35 Utah, 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159, and *Richards* v. *O. S. L. R. Co.*, 41 Utah, 99, 123 Pac. 933, as contended for by defendants' counsel. In those cases conflicting inferences were unauthorized for the reasons there pointed out. The reverse is true in this case.

It is also contended that the court erred in charging the jury:

"That it was the duty of the defendants to use reasonable or ordinary care to keep the premises about which the plaintiff (deceased) was employed in a reasonably safe condition."

This, it is contended, was error, because it made defendants liable, although the relation of master and servant, with respect to the particular work which the deceased was **3** doing, did not exist. We doubt whether, by reading the whole of the instruction, it is open to such a construction; but, assuming it to be so, yet that question was abundantly guarded in other instructions, so that the jury could not have been misled. Indeed, the court, in terms, told the jury that, unless they found that the deceased was working within the scope of his employment, plaintiffs could not recover.

It is next contended that the court erred in withdrawing from the jury the question of contributory **4** negligence. We have read the record carefully, and we can find no evidence whatever, either direct or indirect, upon which a finding of contributory negligence on the part of the deceased could be based. The only claim upon which to base contributory negligence, stating it in counsel's own language, is:

"That under the record in this case the jury had a right to determine * * * as to whether or not the deceased was negligent in being on the scaffold at the time and place and when the same was being torn down."

The mere fact that the deceased was on the scaffold to serve the masons, it is said, might have constituted negligence. Had assumption of risk been pleaded and relied on, there might be something in the contention that the deceased assumed the

risk, but how he, under the facts and circumstances of this case, could have been guilty of contributory negligence by going upon the scaffold which was prepared and intended for that purpose, and upon which at least two masons were working at the time, we cannot understand. If the jury in this case had found the deceased guilty of contributory negligence, we cannot see how the finding could be supported by any substantial evidence.

The last assignment to be considered relates to the damages which the jury awarded the plaintiffs. It is contended that, under the evidence, the damages allowed are not only excessive, but that there is no evidence justifying any substantial damages. Upon this question, the evidence is to the effect that the deceased, at the time of his death, was sixty-one years of age; that he had been married to the plaintiff Anna Brostrom thirty-two years; that they had reared a family of seven children, four of whom were minors, two boys and two girls, aged eighteen, fifteen, fourteen and eleven years, respectively; that the deceased was a kind husband and father; that he was sober and industrious, and of excellent health; that he was practically constantly employed for a period of nine months in each year at a wage of between three dollars and four dollars per day, and that at the time of his death he was earning $3.75 per day; that the deceased and his wife owned one and three-quarters acres of land in Ogden City, with a dwelling house thereon; that the land and dwelling house constituted their homestead and was of the value of about $4,000, and that they had very little of any other kind of property; that his wife and minor children were dependent upon him for their support. Under our statute (Comp. Laws 1907, Section 2912) the jury, in a case like the one at bar, may award "such damages * * * as under all the circumstances of the case may be just." In *Evans* v. *O. S. L. R. Co.*, 37 Utah, 431, 108 Pac. 638, Ann. Cas. 1912c, 259, we took considerable pains to point out what particular elements a jury may consider under the section in question in determining the amount of damages that should be allowed in a case where the wife and children are bereft of the assistance and advice of the husband and father. That

case was somewhat exceptional with regard to the amount that was allowed. There was ample evidence in that case, however, to sustain the verdict of the jury. While we cannot agree with counsel in this case that there is no evidence upon which to predicate the allowance of substantial damages, yet we must concede that the evidence is not as satisfactory as it might be, in view of the amount allowed by the jury, namely, $5,300. But here again we, under our Constitution and statutes, are permitted to interfere only where it is apparent that the jurors were controlled by passion or prejudice, and where the trial court, upon a motion for a new trial upon the ground of excessive damages, has abused its discretion in permitting the amount of the verdict to stand. What is a reasonable amount to be allowed for the death of the husband and father, under the circumstances disclosed by this evidence, is a subject upon which reasonable men may differ. The mere fact that a wife and children are bereft of the husband and father, without more, may support and justify substantial, as contradistinguished from nominal, damages. What the amount should be no doubt depends upon circumstances and conditions. While those circumstances and conditions should be made to appear by proper evidence, yet how can it be determined, as a matter of law, in each case, just what evidence should be adduced? Here we have a case where jurors may entertain divergent views with respect to the amount that should be allowed the widow and children. There is absolutely nothing in this record, except the amount allowed, from which it can be ascertained that the verdict is based upon either passion or prejudice, or both. Nor is there anything made to appear from which we can determine that the trial court abused its discretion in sustaining the amount found by the jury. While, in our judgment, the amount allowed is quite large, and, in the judgment of the writer, seems excessive, yet we can see nothing in the record which justifies us to say that the verdict is manifestly illegal because based upon passion or prejudice, or both, or that the trial court abused its discretion as indicated. In view of this, we have no right to disturb the verdict merely because it is

for a greater amount than in our judgment it should have been. If we disturbed verdicts every time they are contrary to our judgment, litigants would have to abide by our judgment regarding such matters, when the law provides that the judgment they must abide by its that of the jurors.

For the reasons stated the judgment is affirmed, with costs. STRAUP, C. J., and McCARTY, J., concur.