LEWIS et al. v. RIO GRANDE WESTERN RY. CO.

No. 2282.   Decided March 20, 1912 (123 Pac. 97).

1. RAILROADS—OPERATION—INJURIES TO PERSONS ON OR NEAR TRACKS
—OBLIGATION TO AVOID INJURY.   Where the public for a consid-
erable time has been accustomed to use a railroad company's
track as a footpath, without objection, the company is charge-
able with notice, and must use reasonable care to avoid injury
to those passing over the track.[1]   (Page 490.)

2. RAILROADS—OPERATION—ACCIDENTS AT CROSSINGS—NEGLIGENCE—
EVIDENCE.   Evidence held to support a finding that a pedestrian
was struck at a crossing. by a train running at an unlawful
speed, and without giving signals of its approach.   (Page 491.)

3. APPEAL AND ERROR—REVIEW—SCOPE.   The court on appeal in de-
termining the sufficiency of the evidence to support a verdict,
must view the evidence in the light most favorable to the
successful party.   (Page 493.)

4. RAILROADS—OPERATION—ACCIDENTS AT CROSSINGS—CONTRIBUTORY
NEGLIGENCE—EVIDENCE.   In an action for the death of a pedes-
trian, struck by a train at a crossing evidence held not to over-
come the legal presumption that decedent exercised ordinary
care for his own safety.[2]   (Page 493.)

5. RAILROADS—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE
—PRESUMPTIONS.   A pedestrian crossing a railroad track at a
crossing may, in the absence of evidence to the contrary, pre-
sume that the railroad company will exercise ordinary care
in running its trains, and that it will comply with the ordi-
nance regulating the speed of trains.[3]   (Page 493.)

6. DEATH—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS
AND BURDEN OF PROOF.   Where an accident results in instant
death the presumption arising from the natural instinct of
self-preservation is that decedent exercised due care, and war-
rants a recovery for his death, in the absence of countervail-
ing testimony; and the burden of proving contributory negli-
gence rests on defendant.   (Page 494.)

---

[1] Young v. Clark, 16 Utah, 42, 50 Pac. 804; Corbett v. Railroad,
25 Utah, 449, 71 Pac. 1063; Teakle v. Railroad, 32 Utah, 276, 90
Pac. 402, 10 L. R. A. (N. S.) 486; Teakle v. Railroad, 36 Utah,
29, 102 Pac. 635.

[2] Evans v. O. S. L. R. Co., 37 Utah, 431, 108 Pac. 638.

[3] Cromeenes v. Railroad Co., 37 Utah, 475, 109 Pac. 10.

7. Negligence—Question for Jury. Negligence is usually a question of fact; and it is only where but one conclusion can be drawn from the undisputed evidence that it is one of law. (Page 495.)

8. Railroads—Accidents at Crossings—Negligence—Proximate Cause—Evidence. Evidence *held* to support a finding that the negligence of a railroad company in operating its train at an unlawful speed, and in failing to give signals of its approach, was the proximate cause of the death of a person struck by the train at a crossing. (Page 496.)

Appeal from District Court, Fourth District; *Hon. A. H. Christensen*, Judge.

Action by Susie Lewis and another, by her guardian *ad litem*, Susie Lewis, against Rio Grande Western Railway Company.

Judgment for plaintiffs. Defendant appeals.

Affirmed.

*Van Cott, Allison & Riter*, and *S. R. Thurman* for appellants.

*Evans & Evans*, and *Dey & Hoppaugh* for respondents.

### APPELLANT'S POINTS.

We believe it is both fundamental and elementary as a rule of evidence that one cannot presume a fact from a mere presumption. In other words, a presumption cannot be based upon a presumption. (*Manning v. Insurance Co.*, 100 U. S. 693, 698; *Welsh v. Erie & W. V. R. Co.*, 181 Pa. 461, 37 Atl. 513; 16 Cyc. 1051.)

Proof of negligence without more, is not enough. In addition to this, the party upon whom rests the burden of proof must show by some competent evidence that the negligence proved was the proximate cause of the injury complained of, or, where there is more than one cause, that it at least was one of the causes. A *prima facie* case is not established until this is done. (*Rogers v. Rio Grande Western Railway Co.*;

32 Utah, 369, 90 Pac. 1075; *Edd v. Union Pac. Coal Co.,*
25 Utah, 293, 71 Pac. 215; *Fritz v. Electric Light Co.,* 18
Utah, 503, 56 Pac. 90; *Morgan v. Oregon Short Line,* 30
Utah, 85, 83 Pac. 576; *Stone v. Railroad,* 32 Utah, 205, 89
Pac. 715; *Edgar v. Railroad,* 32 Utah, 341, 90 Pac. 745;
*Cook v. Smelting Co.,* 34 Utah, 198, 97 Pac. 28; *Puckhaber
et ux. v. Southern Pacific Co.,* 132 Cal. 363, 64 Pac. 480;
*Welsh v. Erie & W. V. R. Co.,* 181 Pa. 461, 37 Atl. 513;
*Railway Co. v. Henrice,* 92 Pa. St. 434; *Railroad Co. v.
Evans,* 53 Pa. St. 253; *Railroad Co. v. Schertle,* 97 Pa. St.
450; *Stringert v. Ross,* 179 Pa. 614, 36 Atl. 345; *Searles v.
Manhattan Railway Co.,* 101 N. Y. 661; *Armstrong v. Town
of Cosmopolis,* 72 Pac. 1039, 32 Wash. 110; *Hansen v. Seat-
tle Lumber Co.,* 31 Wash. 608, 72 Pac. 457; *Stratton v. C. H.
Nichols Lumber Co.,* 39 Wash. 323, 81 Pac. 831; *Reidhead
v. Skagit County,* 33 Wash. 174, 73 Pac. 1118.)

In the recognized definitions of the term "proximate
cause" as promulgated by the courts and in standard treat-
ises, there is one element universally present, and that is
that in order to be the proximate cause of an injury, it must
appear that the injury would not have happened without the
act or omission relied upon as constituting negligence. This
element is recognized in the following cases: (*Anderson v.
Bransford,* 39 Utah, 256, 116 Pac. 1023; *Smith v. County
Court,* 33 W. Va. 713, 11 S. E. 1, 8 L. R. A. 82; *Baltimore,
etc., R. Co. v. Trainor,* 33 Md. 542; *Deming v. Merchants,
etc. Co.,* 90 Tenn. 306, 17 S. W. 89, 13 L. R. A. 518; *Mill
Co. v. Standard Oil Co.,* 63 Fed. 400, 27 L. R. A. 583; *Rider
v. Syracuse, etc., R. Co.,* 171 N. Y. 139, 58 L. R. A. 125.)
When a recovery is sought against a railroad company on the
ground that it was running its train at the time of the injury
in excess of a statutory rate of speed it must be made to ap-
pear before a recovery can be had that such excessive speed
was the cause of the injury. (*Story v. Railroad Co.,* 79 Iowa,
402, 44 N. W. 690; *Haas v. Railroad Co.,* 41 Wis. 44; *Rail-
road Co. v. Kennedy,* 3 Kan. App. 693, 43 Pac. 802; *Penn.
Co. v. Hensil,* 70 Ind. 569, 36 Am. Rep. 188.) The theory
contended for and upon which a recovery is sought must be

established by a preponderance of the evidence, even though circumstantial, to the exclusion of all other inconsistent theories. (*Neal v. Chicago, etc., Ry. Co.,* 129 Ia. 5, 105 N. W. 197; *Manning v. Railroad Co.,* 105 Mich. 260, 63 N. W. 312; *Chandler v. Railroad Co.,* 159 Mass. 589, 35 N. E. 89; *Donald v. Railroad Co.,* 93 Iowa 284, 61 N. W. 971; *State v. Railroad Co.,* 58 Md. 221; *Lee v. Reliance, etc., Co.,* 21 R. I. 549, 45 Atl. 554; *Asbach v. Ry. Co.,* 74 Iowa, 248, 37 N. W. 182; *Reynolds v. Burgess, etc. Co.,* 73 N. H. 126, 59 Atl. 615; *Wheelan v. Ry. Co.,* 85 Ia. 167, 52 N. W 119, 16 Cyc. 1051.)

There being no evidence tending to show that the death of the deceased was proximately caused by the negligence relied upon, it was the clear duty of the court to determine as matter of law that the defendant had been guilty of no negligence which was the proximate cause of the decedent's death. (*Pratt v. Utah Light & Ry. Co.,* 38 Utah, 500, 113 Pac. 1032; *Edgar v. R. G. W. Ry. Co.,* 32 Utah, 330, 90 Pac. 745; *Anderson v. Bransford,* 39 Utah, 256, 116 Pac. 1023; *Railway Co. v. Trich,* 2 Am. St. Rep. 672; *Stone v. Boston, etc., R. Co.,* 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; *Read v. Nichols,* 118 N. Y. 224; *Cuff v. R. R. Co.,* 35 N. J. L. 17; *Behling v. Pipe Lines,* 160 Pa. 359, 28 Atl. 777, 40 Am. St. Rep. 724; *Mill Co. v. Standard Oil Co.,* 63 Fed. 400.)

Where it appears that a pedestrian is struck by a train on a crossing from which the train which struck him could be seen for a distance of over three hundred feet and heard for a distance much greater than that and where no exceptional conditions exist interfering with the ability to see and hear, it ought to be conclusively presumed as a matter of law that the person struck was guilty of contributory negligence. (*Wilkinson v. Railroad,* 35 Utah, 110, 99 Pac. 466; *Kirtley v. Railway Co.,* 65 Fed. 390; *Marland v. Railway Co.,* 123 Pa. 487, 16 Atl. 623; *Moore v. Railroad Co.,* 108 Pa. St. 349; *Railroad v. Bell,* 122 Pa. 58, 15 Atl. 561; *Lake Erie and W. R. Co. v. Stick,* 143 Ind. 449, 41 N. E. 365; *Tomlinson v. C. M. & St. P. Ry. Co.,* 134 Fed. 233; *Rollins v. Ry.*

*Co.,* 139 Fed. 639; *Penn. R. Co. v. Mooney,* 126 Pa. 244, 17 Atl. 590; *Sullivan v. Ry. Co.,* 175 Pa. 361, 34 Atl. 798; *State v. Maine Central R. Co.,* 76 Me. 366, 49 Am. Rep. 622; *Railroad v. Beale,* 73 Pa. St. 504; *Wilcox v. Railroad,* 39 N. Y. 358, 100 Am. Dec. 440.)

Plaintiff in the court below insisted that the crossing in question was particularly dangerous on account of the curve in the road and the trees and undergrowth on the east side of the right of way. The witnesses whose testimony we have quoted allowed for that in their testimony and the distances given to which a train could be seen took these obstructions into consideration. But assuming the crossing was more dangerous than it would have been without these obstructions the duty of deceased to exercise a higher degree of care became all the more imperative. (*Railway Co. v. Chrisman,* 19 Colo. 30; *Kwiothowski v. Ry. Co.,* 70 Mich. 551, 38 N. W. 463; *Gardner v. R. R. Co.,* 97 Mich. 240, 56 N. W. 603; *Chase v. R. R. Co.,* 78 Me. 346, 5 Atl. 771; *Hayden v. Ry. Co.,* 124 Mo. 566, 28 S. W. 74; *Holden v. Ry. Co.,* 169 Pa. St. 1, 32 Atl. 103.)

McCARTY, J.

Plaintiffs, the surviving widow and the daughter of John S. Lewis, deceased, brought this action to recover damages for the death of said Lewis, alleged to have been caused by the negligence of the defendant in operating a locomotive and train of cars within the corporate limits of the City of Lehi.

It is alleged in the complaint that at all times therein mentioned the tracks of the defendant company ran through said City of Lehi, and upon, along, over, and across various streets thereof; that on July 3, 1905, at about the hour of midnight, Lewis, the deceased, was traveling over and upon one of the streets of said city on which was said railroad, and, while crossing the railroad track, was struck by a locomotive to which was attached a train of cars owned and operated by defendant, and was knocked down and under the wheels of said locomotive and instantly killed; that the locomotive and train of cars, at the time of the accident, were running at a

great and dangerous rate of speed, and in excess of that permitted by the ordinances of Lehi City; that the defendant negligently failed to sound the whistle or ring the bell, or to give any warning of the approaching train, and failed to have any flagman or other employee for that purpose; and that by reason of these negligent acts and omissions the said Lewis was struck and killed, as aforesaid. The answer of the defendant denies the negligence alleged, and alleges want of knowledge or information sufficient upon which to form a belief as to how the deceased came to be upon the railroad track, or in what manner he was struck by the train. The answer affirmatively alleges that the deceased was guilty of contributory negligence. A trial was had to a jury, which resulted in a verdict in favor of plaintiffs for the sum of $7500. From the judgment rendered on the verdict, defendant appeals.

The facts in the case, briefly stated, are as follows:

Appellant's depot in the Town of Lehi is situated on or near the northwest corner of the block fronting on First North and Third West Streets. From the depot, the railroad track runs due south along the center of Fourth West Street until it reaches Third South, from which point it runs on a curve to the east side of Fourth West and diagonally through the west half of the adjacent block, and crosses Fourth South Street at a point near the center of the block. There are cattle guards and a fence across appellant's right of way where the track enters the block mentioned on the north, and also where it leaves the block at Fourth South Street; and there is a fence, from four to five feet high, and a row of black willow and poplar shade trees, from twenty to thirty feet high, on the east side of the right of way, where the track runs on a curve through the block. There are telephone or telegraph poles the usual distance apart, and a somewhat dense grove of willows between the fence and the east side of the right of way and the railroad track. The willows, which are from five to fifteen feet high, extend northwesterly and southeasterly along the right of way the entire length of the block. The space between the rails, where the track curves

diagonally through the block from Third to Fourth South, was and is used by the public as a common footpath. Fourth South is a public highway, and the place where it is crossed by appellant's railroad track is a public crossing. From this crossing north, and for several blocks beyond the depot, the railroad track is in the city limits and within the inhabited portion of the town. The evidence, without conflict, shows that a person approaching the track from the east on Fourth South cannot, because of the curve in the right of way and the obstructions mentioned, see the track to the north until he reaches the crossing; and from the crossing the track, on a clear day, can only be seen through the block a distance of about twenty-four rods. The maximum speed of trains permitted by the ordinance of Lehi City is eight miles an hour through the inhabited portion of the town. On July 3, 1905, at about twelve o'clock midnight, one of the defendant's trains going south and running at the rate of about "forty or forty-five miles an hour," passed through Lehi. The evidence tends to show that the whistle was not sounded nor the bell rung as the train passed through the town. The next morning, at about five o'clock, the body of Lewis, which was badly mutilated, was found scattered along the railroad track. No one witnessed the collision; nor is there any direct evidence showing the exact location where he was struck. There was a pool of clotted blood in the roadway, between the rails, where the track crosses Fourth South Street. Both of the deceased's legs were found on the crossing, one on the inside and the other on the outside of the rails. The trunk, or upper part of the body, was found a few rods south of the crossing, "about six feet over the embankment from the rails," and on the west side of the track. The watch of the deceased was found near the trunk of the body. The hour hand pointed to twelve o'clock. The minute hand was gone. The watch, when found, was not running; but the evidence shows that it was running at one minute to eleven o'clock the night previous (July 3d). There was a large pool of blood between the rails opposite the place where the body and the watch were found. North of the crossing, and to about the

middle of the block, small particles of flesh and bone were found scattered along the track. Lewis, at the time of his death, was about twenty-four years of age. He was last seen alive on July 3, 1905, a few minutes before midnight.

Daniel Cox, a witness for the plaintiffs, testified that he was with Lewis continuously from 11 o'clock p. m. until 11:45 p. m. on the night of July 3d; that he parted with Lewis and last saw him at about fifteen minutes to twelve, midnight, at the southwest corner of the intersection of First South and Third West Streets; that as they parted Lewis remarked, "I am going down this way," and walked south on Third West Street, which was in the opposite direction from his home. The record shows that the corner where Lewis and Cox parted is about three blocks north and one-half block east of the place where the remains of Lewis were found.

To avoid the effect of the evidence given by Cox respecting the time and place he parted with Lewis, appellant called a witness, Mark Shaw, who testified that he met Lewis on the night in question at "about twelve o'clock, or around there," on Main Street, walking west toward the railroad track. The place where Shaw claimed he met Lewis is one block east of the track and one block north of where Cox testified he last saw him. On cross-examination, Shaw admitted that "it might have been fifteen, or twenty, or twenty-five, minutes to twelve" when he met Lewis. He also appeared to be somewhat confused regarding the day of the month on which he met Lewis.

The apparent conflict between the testimony of this witness and that given by Cox, respecting the exact location of Lewis fifteen or twenty minutes before twelve o'clock on the night of the accident, is, as we view the case, of no importance. Nor do we think the question of whether Lewis was walking along the track used by the public as "a common footpath," between Third and Fourth South Streets, or was in the act of crossing the track at Fourth South, when he was killed, is of controlling importance. It is settled in this jurisdiction that, where the public for a considerable length of time has been accustomed to use a

railroad track as a footpath, without objection, the railroad company is chargeable with notice of such usage, and is bound to use reasonable care to avoid injury to persons who may have occasion to pass along and over its track. (*Young v. Clark,* 16 Utah, 42, 50 Pac. 804; *Corbett v. Railroad,* 25 Utah, 449, 71 Pac. 1063; *Teakle v. Railroad,* 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486; *Teakle v. Railroad,* 36 Utah, 29, 102 Pac. 635.) We think, however, the great weight of the evidence tends to show that Lewis was on or near the railroad crossing at Fourth South Street, when he was struck by the train and killed.

The principal grounds upon which appellant relies for a reversal of the judgment are: (1) That the evidence failed to show that any negligent act or omission of appellant was the proximate cause of the death of Lewis; and (2) that the evidence introduced by respondents affirmatively showed that Lewis was guilty of contributory negligence.

It is admitted that Lewis was run over and killed by appellant's train of cars. It is also admitted that the train of cars mentioned in the foregoing statement of facts was, at the time it passed through Lehi, running at an unlawful rate of speed. And there was evidence from which the jury might well conclude that neither the bell was rung nor the whistle sounded, as the train passed through the town. But counsel for appellant contend "that there is not a scintilla of evidence in the record tending to show that that particular train inflicted the injury" and caused the death of Lewis. In their discussion of the case, counsel say:

"Conceding that he was struck by some train running through the town between midnight of July 3d and five o'clock on the following morning, yet there is no evidence whatever tending in the slightest degree to show that he was struck by one train more than another. . . . Many other trains may have passed through the town in either or both directions in a period of five hours. . . . It is *possible* that any one of a number of trains was responsible for the result; but the possibilities do not connect one train more than another with the injury."

And it is also urged that Lewis may have been killed by a train running at a lawful rate of speed. This contention is untenable. The undisputed evidence shows that the train in question passed through Lehi at "about midnight" July 3d. The jury might well have found from the evidence that Lewis was last seen alive about 11:45 that night, about one-half block east and four blocks north of the place where his body was found the following morning. The hour hand of his watch, which was found near his body, pointed to twelve. The watch was not running; but the evidence showed that it was running at 10:59, one hour before the train mentioned passed through Lehi. This fact, when considered in connection with the other facts and circumstances to which we have referred, was amply sufficient to sustain a finding that Lewis was run over and killed by the train that passed through Lehi at midnight July 3d. Moreover, there was no evidence of any other train having passed south through Lehi over that particular track soon after, or, as suggested by appellant's counsel, "immediately following the particular train" in question. In fact, there is no evidence tending to show that any other train passed through Lehi over the track between midnight July third and the time when the mutilated remains of Lewis were found, except the finding of particles of flesh and bone north of the crossing which, as suggested by respondent's counsel, might have been carried there by a train going north after the collision. As we view the record, a conclusion different from the one arrived at by the jury on this phase of the case would not be permissible under the evidence.

And we are also of the opinion that there was ample evidence to support a finding that Lewis was struck and killed at the railroad crossing on Fourth South Street. We do not think there is any force or merit to the suggestion that "the deceased might have been assaulted and rendered unconscious by footpads and thrown upon the track," or that he may have fallen upon the track in a fit, and there remained in an unconscious state until killed by the train, or that he "may have stumbled in the dark over some object near the track and fallen thereon and become unconscious." These sugges-

tions as to how the deceased came to be upon the track are mere conjectures. There is not a scintilla of evidence in the record from which it might reasonably be inferred that the presence of the deceased on the railroad track at the time when he came to his death was due to either of the causes suggested by counsel. Furthermore, there is nothing in the record tending to show that Lehi was infested with footpads, or that a footpad was within twenty miles of the town at the time Lewis was killed. Nor is there any evidence whatever tending to show that he was an epileptic, or that he had ever had a fit of any kind. On the contrary, the evidence shows that he was a strong, vigorous young man of about twenty-four years of age, and that at about fifteen minutes before twelve o'clock on the night in question he was in good health and in possession of his faculties.

Counsel for appellant concede that respondents are entitled to the legal presumption that Lewis was exercising ordinary care for his own safety at the time he was run over and killed. The important question therefore is: Does the evidence, when viewed in the light most favorable to respondents, overcome this legal presumption of ordinary care on the part of Lewis? We think not. As hereinbefore stated, the evidence showed that a person approaching the railroad track from the east on Fourth South Street could not, because of the obstructions, consisting of fences, cattle guards, telephone poles, trees, and the dense growth of willows which were either upon or near appellant's right of way, see the 3, 4, 5 track to the north until he came to or was practically on the crossing. And there was evidence tending to show that a train coming from the north in the nighttime could not, because of the curve in the track and the obstructions referred to, be seen from the vicinity of the crossing until it was within 200 or 250 feet of the crossing. And the evidence also showed that at the time the train in question passed through Lehi on the night of the accident a wind was blowing from the north, which caused a rustling among the leaves of the willows and trees within the vicinity of the crossing which, to some extent, may have prevented Lewis

from hearing the noise created by the approaching train as readily as he otherwise might have done. Furthermore, Lewis had a right to presume, and to act upon the presumption, in the absence of evidence to the contrary, that appellant would exercise ordinary care in running its trains within the corporate limits and inhabited portions of the town, and that it would comply with the town ordinance, and not run its train to exceed eight miles an hour. (*Cromeenes v. Railroad Co.*, 37 Utah, 475, 109 Pac. 10; *Cleveland, etc., Ry. Co. v. Harrington*, 131 Ind. 426, 30 N. E. 37; *Kunz v. Oregon R. Co.*, 51 Or. 191, 93 Pac. 141, 94 Pac. 504; 2 Thomp. on Neg. section 2103.)

The evidence shows that the distance between Third South and the crossing on Fourth South Street is about 400 feet. One witness, who claimed to have seen the train in question and observed its speed as it passed through Lehi on the night of the accident, testified in part as follows: "I don't think it would have taken that train over three or four seconds to run through the block between Third and Fourth South Streets." According to this testimony, the train was running approximately at the rate of 100 feet second. As we have observed, there was evidence tending to show that a train coming from the north could not be seen from the point where the railroad track crosses Fourth South Street until it was within 200 or 250 feet of the crossing. Under such circumstances, a person in the act of crossing the track on Fourth South as the train came in sight from the north would have had but two or two and one-half seconds to get out of the way. Moreover, in cases of this kind, where the accident results in instant death, the rule seems to be that "the law, out of regard to the instinct of self-preservation, presumes that the deceased at the time was in the exercise of due care, 'and this presumption is not over-thrown by the mere fact of injury.' The burden rests upon the defendant to rebut this presumption." (*Flynn v. K. C., St. J. & C. B. R. Co.*, 78 Mo. 212, 47 Am. Rep. 99.)

The Circuit Court of Appeals, Eighth Circuit, in the case of *Northern Pac. Ry. Co. v. Spike*, 121 Fed. 44, 57 C. C. A.

384, which involved this same principle, after referring to the language of the Missouri court which we have quoted, said:

"The presumption arising from this natural instinct of self-preservation stands in the place of positive evidence, and is sufficient to warrant a recovery, in the absence of countervailing testimony."

Citing with approval the following cases: *Johnson v. Railroad Co.*, 20 N. Y. 65, 69, 75 Am. Dec. 375; *Oldfield v. N. Y. & Harland R. Co.*, 14 N. Y. 310; *Adams v. Iron Cliffs Co.*, 78 Mich. 271, 44 N. W. 270, 18 Am. St. Rep. 441; *Railway Co. v. State*, 29 Md. 420, 438, 96 Am. Dec. 545; *Railroad Co. v. Nowicki*, 46 Ill. App. 566; *City of Naples*, 32 U. S. App. 613, 16 C. C. A. 421, 69 Fed. 794; *Allen v. Willard*, 57 Pa. 374; *Schum v. Railroad Co.*, 107 Pa. 8, 52 Am. Rep. 468; *Cox v. Railroad Co.*, 123 N. C. 604, 31 S. E. 848; *Cameron v. Railway Co.*, 8 N. D. 124, 77 N. W. 1016. In the case of *Ready v. Peavey Elevator Co.*, 89 Minn. 154, 94 N. W. 442, the court said:

"It is well to note that negligence is usually a question of fact, and that it is only in exceptional cases, where but one conclusion can be drawn from the undisputed evidence, that it is one of law; that, where a charge is made against a dead man that he was guilty of negligence causing his death, the presumption is very strong that, prompted by the instinct of self-preservation, he exercised due care, and that the presumption continues until the contrary is clearly made to appear."

Applying the well-settled principles of law to the facts in this case, we are not warranted in holding that Lewis was, as a matter of law, guilty of contributory negligence. *Evans v. O. S. L. R. Co.*, 37 Utah, 431, 108 Pac. 638; 2 Thomp. on Neg. section 1699.

It is further contended on behalf of appellant that there is no "evidence to show any causal connection between the speed of the train or the failure to give signals and the death of the deceased, tending to show that he was killed *because* of the train running at an excessive and unlawful rate of speed, or the signals not given." In their brief, counsel say: "What

is there to . . . show that the deceased would not have been killed if the train had been running at a lawful rate of speed; that is, eight miles per hour? Wherein does it appear that the deceased would have escaped injury if the ordinance limiting the speed of trains within the city limits and requiring the giving of signals had been obeyed?" We think the record furnishes a complete answer to these questions. As we have observed, the jury were warranted in finding from the evidence that Lewis was run over and killed while he was in the act of crossing the railroad track at Fourth South. And the jury might well have concluded that if the train had been operated at a lawful rate of speed within the corporate limits of Lehi it would have been several minutes longer than it was in reaching the crossing on Fourth South Street, and that Lewis would have passed over the crossing in safety, and would have been some distance from the track when the train arrived at the crossing. *Ward v. Chicago, B. & Q. R. Co.,* 97 Iowa, 50, 65 N. W. 999; *Louisville, N. O. & T. R. Co. v. Caster,* 5 South. (Miss.) 388.

Complaint is made that the court erred in its charge to the jury, and erred in refusing to give certain instructions requested by appellant. We have carefully examined the charge as given and the rejected instructions asked for by appellant, and find no error. The charge of the court, when considered in its entirety, was as favorable to appellant as the facts warranted.

The judgment is affirmed, with costs to respondents.

STRAUP, J., concurs.

FRICK, C. J.

I concur. My first impressions, however, were, that the evidence was of such a nature as unavoidably led to the conclusion that, if the deceased had exercised ordinary care in either looking or listening for an approaching train, he should have seen or heard it in time to have avoided the collision. Upon a careful reading of the record I have, however, become convinced that under all the facts and circum-

stances the question of contributory negligence was a question of fact for the jury. As suggested by my associate, the decision upon this question is therefore controlled by the principles announced in the case of *Evans v. O. S. L. R. Co.*, 37 Utah, 431, 108 Pac. 638, and not by the rule laid down in the more recent case of *Bates v. S. P., L. A. & S. L. Ry. Co.*, 38 Utah, 568, 114 Pac. 527.