## TREMELLING v. SOUTHERN PACIFIC CO.

No. 3092. Decided December 4, 1917. (170 Pac. 80.)

1. MASTER AND SERVANT—DEATH OF SERVANT—BURDEN TO ESTABLISH NEGLIGENCE AND PROXIMATE CAUSE. In a wife's action against a railroad under the Federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1916, sections 8657-8665), for death of her husband, a brakeman, plaintiff was required to establish, by a preponderance of the evidence, that the railroad was negligent in one or more of the acts charged, and that such negligence was the proximate cause of the death. (Page 200.)

2. NEGLIGENCE—BURDEN TO SHOW ACCIDENT WAS PRODUCED BY CAUSE FOR WHICH DEFENDANT IS RESPONSIBLE. Where an accident occurs through the alleged negligence of one person resulting in injury to another, and the injured person seeks to recover damages, and it is made to appear that the accident may have been occasioned by one of two or several causes, and that the person complained of is responsible only for one of them, the burden is on plaintiff to show that the accident and resulting damages were produced by the cause for which the person complained of is responsible, and, if the probabilities are equally balanced, plaintiff must fail.[1] (Page 200.)

3. MASTER AND SERVANT—DEATH OF SERVANT—LIABILITY OF MASTER— ABSENCE OF SHOWING THAT DEATH WAS DUE TO MASTER'S NEGLIGENCE. Where the body of plaintiff's decedent, defendant railroad's brakeman, was found beside the track, so that his death might have been caused by his falling from his moving freight train and crushing his head on the frozen ground, as well as coming in contact with a car on a side track while standing in the stirrup of a car of his own train to look for a hot box, and there was evidence that when the body was discovered the car on the side track was covered by frost which could not be touched without leaving marks, and yet gave no indication that plaintiff's decedent had come in contact with it, judgment for plaintiff could not stand, since, where

[1] *James* v. *Robertson*, 39 Utah 414, 113 Pac. 1068.

the proximate cause of the injury is left to conjecture, plaintiff must fail as matter of law.[1]   (Page 201.)

4. DEATH—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE—PRE-SUMPTION. It will not be presumed that a railroad's brakeman, killed in service in broad daylight, unnecessarily exposed himself to the danger of being struck by a car on a side track while he stood in the stirrup of a car in his train on the main track, when he could easily have avoided the danger, the presumption being that the servant was not negligent in any respect.   (Page 203.)

5. EVIDENCE—JUDICIAL NOTICE—PHENOMENA OF NATURE. The court takes judicial notice, as a force of nature, of phenomena connected with frost on objects in cold weather, particularly of the fact that such frost is caused by the difference in temperature between the object on which it appears and the surrounding atmosphere containing moisture.   (Page 204.)

6. MASTER AND SERVANT—DEATH OF SERVANT—PROXIMATE CAUSE. If a railroad's brakeman, standing in the stirrup of a car of his train to look for a hot box, lost his hold on the handhold, and, as he was falling, came in contact with a car negligently placed by the railroad on a side track, the contact with the car was not the proximate cause of the brakeman's death, which was the loosening of his hold and the fall.   (Page 205.)

7. APPEAL AND ERROR—REVIEW—VERDICT. If there is any substantial evidence in support of the verdict, the Supreme Court will not invade the province of the jury and pass on questions of fact; but where there is no substantial evidence in support, the findings or verdict must fail.   (Page 205.)

Appeal from District Court of Salt Lake County, Third District; *Hon. T. D. Lewis*, Judge.

Action by Mrs. Hattie Tremelling, administratrix, against the Southern Pacific Company.

Judgment for plaintiff.   Defendant appeals.

REVERSED, and cause remanded with directions to grant a new trial.

_____

[1] *Christensen* v. *Railroad*, 35 Utah 137, 99 Pac. 676; *Richards* v. *Railroad Co.*, 41 Utah 99, 123 Pac. 933; *Edd* v. *Union Pac. Coal Co.*, 25 Utah 297, 71 Pac. 215. Distinguishing *Lewis* v. *Rio Grande Western Ry. Co.*, 40 Utah 483, 123 Pac. 97.

*Geo. H. Smith, J. V. Lyle,* and *B. S. Crow* for appellant.

*Willard Hanson* for respondent.

### APPELLANT'S POINTS

Since this action was brought under the Federal Employer's Liability Act, it should be borne in mind that the rights and obligations of the parties hereto depend upon such act and applicable principles of the common law as interpreted and applied in Federal courts. *(Southern R. Co.* v. *Gray,* 336 Sup. Ct. Rep. 561; *Seaboard Air Line R. Co.* v. *Horton,* 233 U. S. 492, 58 L. Ed. 1062, L. R. A. 1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B 475, 8 N. C. C. A. 834; *Central Vermont R. Co.* v. *White,* 238 U. S. 507, 59 L. Ed. 1433, 35 Sup. Ct. Rep. 865, 9 N. C. C. A. 265; *Great Northern R. Co.* v. *Wiles,* 240 U. S. 444, 36 Sup. Ct. Rep. 406.)

It is a principle of almost universal application that where the testimony leaves the matter uncertain and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half dozen causes and find that the negligence of the employer was the real cause, when there is not satisfactory foundation in the testimony for that conclusion. *(Patton* v. *Texas & P. R. Co.,* 179 U. S. 658, 21 Sup. Ct. Rep., 275; *Midland V. R. Co.* v. *Fulgham,* 181 Fed. 91; *Reid* v. *S. P., L. A. & S. L. R. R. Co.,* 39 Utah 617; *Searles* v. *Manhattan Ry. Co.,* 101 N. Y. 661, 5 N. E. 66; *Whitehouse et al.* v. *Bryant L. & S. M. Co.,* (Wash.) 97 Pac. 751; *Glancy* v. *McKees Rocks Bourow,* 89 Atl. 972; *Puckhaber et ux.* v. *Southern Pac. Co.,* 132 Cal. 363, 64 Pac. 480; *In re Lucke's Estate,* 123 Pac. 46.)

### RESPONDENT'S POINTS

The court "cannot properly undertake to weigh the evidence. His duty is to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict and from that evidence and the inferences reasonably

and justifiably to be drawn therefrom determine whether or not under the law a verdict might be found for the party having the onus."

Mr. Justice Lurton, in *Railway* v. *Lowery*, 74 Fed. 467, 20 C. C. A. 596.

To the same effect are:

*Mitchell* v. *Railway Company*, 197 Fed. 528 (C. C. A.); *Shadoan* v. *Railway*, 220 Fed. 68 (C. C. A.); *Smith etc. Co.* v. *Detroit etc. Co.*, 220 Fed. 600 (C. C. A.).

The Court will look at the evidence and the most favorable inferences therefrom in behalf of the plaintiff to determine whether some reasonable men might conclude therefrom that it was probable that the deceased came to his death in the way claimed. But in no other sense does the appellate court weigh the evidence. 38 Cyc. 436; *Lincoln* v. *Power*, 151 U. S. 436; *Railway* v. *Lowery*, 74 Fed. 467; *Mitchell* v. *Railway Co.*, 197 Fed. 528 [C. C. A.]; *Shadoan* v. *Railway*, 220 Fed. 68, [C. C. A.]; *Smith etc. Co.* v. *Detroit etc. Co.*, 220 Fed. 600 [C. C. A.]; *Ewell* v. *Mining Company*, 23 Utah 192; *Stone* v. *Railroad Co.*, 32 Utah 185; *Tucker* v. *Laundry*, 30 Utah 273; *Dunn* v. *S. L. & O. R. Co.*, 47 Utah 137; *James* v. *Robertson*, 39 Utah 414; *Railroad* v. *McDade*, 191 U. S. 64.

It is not sufficient that the defect be obvious, but unless the risk is so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it, there is no assumption of risk. *Schlemmer* v. *Railroad*, 220 U. S. 590, 55 L. 596; *Texas & P. R. Co.* v. *Harvey*, 228 U. S. 319, 57 L. 852; *Gila Valley R. Company* v. *Hall*, 232 U. S. 94, 58 L. 521; *Seaboard etc. Co.* v. *Horton*, 232 U. S. 492, 58 L. 1063; *Chesapeake etc. Co.* v. *DeAtley*,. 241 U. S. 310, 60 L. 1016; *Railroad* v. *McDade*, 191 U. S. 64, 48 L. 96; *T. & P. R. Co.* v. *Archibald*, 170 U. S. 665, 42 L. 1188.

The master cannot conclude the servant by showing that he acted as others ordinarily acted; the question remaining, even after such a showing when made, as to whether he was negligent. *Texas & Pacific Railway Company* v. *Behymer*, 189 U. S. 468; 47 L. 905; *Nyback* v. *Lumber Company*, 109 Fed. 732; *Redfield* v. *Railway*, 112 Cal. 220; 43 Pac. 1117;

*McCormick* v. *Burandt* [Ill.], 26 N. E. 588; *Jennings* v. *Edge-field* [S. C.], 52 S. E. 113; *Silverson* v. *Jenks*, 92 N. Y. S. 382; *Stone* v. *Railroad Company*, 35 Utah 305; 3 Labatt M. & S., Sec. 947.)

FRICK, C. J.

The plaintiff sued, on behalf of herself and infant child, to recover damages caused by the death of her husband. The action is predicated upon the federal Employers' Liability Act of April 22, 1908.

The allegations of negligence, in substance are that the defendant constructed and maintained a side track at a station near Tecoma on its line of railroad in the state of Nevada; that defendant's negligence consisted in constructing and maintaining said side track so near to the main line of its railroad, and in placing a large freight car thereon, that the deceased, who was employed as a brakeman on one of defendant's freight trains, and while in the discharge of his duties on said train, on the 9th day of December, 1915, came in contact with said car on said side track while said train was passing the same, and was instantly killed. The defendant, while admitting the construction and maintainance of said side track and placing the freight car thereon alleged, nevertheless denied all acts of negligence, and averred in its answer that the deceased came to his death by reason of his own carelessness and negligence, and also averred that he had assumed the risk of injury, fully stating the facts in that regard.

There is not the slightest dispute respecting the facts, which, briefly stated, are as follows: .

Tecoma is the name of a station and also the name of a small town on defendant's line of railroad in the state of Nevada. Another station on its line is called Montello, which is about 4.9 miles west of Tecoma. Tecoma station is about three-fourths of a mile west of the town of Tecoma. On the morning of the 9th day of December, 1915, the deceased was employed as head brakeman on a fast freight composed of

46 cars loaded with fruit going east. The train was in charge of Conductor D. A. Cramer and a crew consisting of two brakemen, of which the deceased was one, and a fireman and engineer. The conductor testified for the plaintiff. He, in substance, said that the train in question left Montello station at eight fifty-three o'clock on the morning in question, and that it passed Tecoma without stopping at about nine fifteen o'clock. The other trainmen who testified for the plaintiff corroborated the conductor's statements in that regard. Before leaving Montello station the conductor "picked up" a freight car on which a new pair of wheels had been placed at Montello. Before leaving Montello the conductor spoke to the deceased. We quote from the testimony of the conductor as found in the bill of exceptions. He said: "I says, 'Kid, there is a car there with a pair of new wheels put in; kind of keep your eye on it to see that it don't run hot.'" The conductor also said that by the phrase "keep your eye on it" it was not intended and was not understood that the deceased was expected to do more than "to keep on the lookout to see that there is no hot box." The car was placed next to the tender in the rear of the engine, so that it was the head car in the train. The train passed Tecoma station without stopping, and both the rear brakeman and the deceased were at their posts on the top of the train, the deceased being near the head end of the train. The conductor and the rear brakeman testified that in passing the town of Tecoma the train was running "about twenty-five or thirty miles an hour." The rear brakeman said that in passing Tecoma station, which is about three-fourths of a mile west of the town of Tecoma, where the accident occurred, he saw the deceased at his post on the train near the front end and that he gave him the "proceed signal"; that the deceased repeated the signal to the engineer, and the latter answered it by the usual two blasts of the whistle, and the train passed on. That is the last that the rear brakeman saw of the deceased. The fireman, however, testified that at about the time just referred to by the rear brakeman he passed from his side of the engine to the engineer's side and looked back toward the rear of the train,

and in doing so saw the deceased standing in the "stirrup," or the lower step (which is an iron step on which the trainmen stand in going on or off the cars), as though he were looking at a hot box. The fireman, however, says that he only got a "glimpse of him." That was the last time the deceased was seen alive. About a half or three-fourths of an hour after the train had passed the town of Tecoma one A. W. Purdy discovered the body of the deceased. The following plat will, to some extent, assist the reader to a better understanding of what follows:

The track marked "M. L." is the main line on which the freight train on which the deceased was employed was running at the time. The railroad at the point in question, when looking east, runs in a northeasterly direction. The track marked "S. T." is the side track in question, and the parallelogram marked "C" on the plat represents the large steel freight car which was standing on the side track and with which, it is contended, the deceased came in contact. The

point marked "X" on the plat is the point at which the witness testified there were indications, as hereinafter stated, where the deceased first struck the ground; and the point marked "B" indicates the point where the body of the deceased was found by Mr. Purdy. The head of the deceased was lying against the north rail and his feet in the direction indicated by the dotted line.

It appears that the body had slid from the point "X" to the point "B," which was shown to be a distance of approximately twenty feet, more or less.

The broken line running parallel with the main line represents the distance the freight cars on the freight train projected over the rail. The distance between the center of the top of the south rail on the main line and the center of the top of the north rail on the side track, as testified to by one of plaintiff's witnesses, is seven feet five inches, or eighty-nine inches. That left a space of about thirty inches between the cars on the freight train and the car standing on the side track, perhaps a little less.

It is the theory of plaintiff's counsel that the deceased was looking at the wheels on the rear end of the head car in the freight train to see whether the journals were heating; that in doing so he was standing in the "stirrup" or "lower step" of the car holding on to what is called the "grab iron" on the side of the car; that he was leaning outward from the car, and while in that position his body came in contact with the car standing on the side track, and that he was killed by the impact.

Recurring now to the testimony of the witnesses, one C. F. Lee, who testified for the plaintiff, said that from a half to three quarters of an hour after the freight train had passed the town of Tecoma he was informed by Mr. Purdy that there was a man lying at the point "B" indicated on the plat; that he and Mr. Purdy immediately went to the place, and found that the man was the deceased and that he was dead; that they made an examination, and found where the deceased had first struck the ground. In that connection one of the witnesses, in answer to the question, "Just state what you found

there upon the ground between the two tracks,'' said: ''From the car door, or about the center of the car, up to this point here was a trail where the frost was all swept away and the dust swept away as clear as you could sweep it with a broom and up to the east wheel—the east wheel. Mr. Tremelling was lying with his head against the rail over here with the coat over his head.'' The foregoing contains the substance of the testimony of a number of witnesses.

The point ''X'' on the plat is the point the witness referred to as the ''car door,'' and the ''trail'' referred to by him is indicated by the dotted line on the plat.

When the body of the deceased was first discovered, the two witnesses, Mr. Lee and Mr. Purdy, made an examination of the car standing on the sidetrack to determine whether the deceased had come in contact therewith, and, if so, at what point. They discovered nothing, but did not make as thorough examination as was done a little later.

Mr. Lee or Mr. Purdy immediately notified the coroner of the county, who lived at Montello station, about 4.9 miles west of Tecoma. The coroner, a Mr. Thurston, and the deputy sheriff, Mr. Zundel, arrived at Tecoma in an automobile, as they say, between ten-thirty and eleven o'clock a. m.

All the witnesses testified that the morning in question was a cold, frosty morning. Some characterized it as cold and frosty. The witness Lee, however, said that it was not ''freezing when he was at the car,'' meaning when he and Purdy were first there. There had been a fog earlier in the morning, but the witnesses said the fog had disappeared when the body of the deceased was found. Indeed, the testimony is to the effect that the fog had passed away at Tecoma when the freight train passed through the town.

Immediately after Mr. Thurston, the coroner, had arrived, he called several men who lived at Tecoma, as jurors, and proceeded to examine the body of the deceased and the conditions surrounding it. A number of witnesses testified, and their testimony is to the effect that the body was lying as before indicated; that the back of his skull was ''crushed to a pulp'' from the crown of the head down to the base of the skull;

that there were some traces of blood from near the point "X," continuing along the trail to where the body was lying, at which point there was "a pool of blood"; that the deceased had a mitten on one hand, while the other mitten was lying some distance from the body; that the car on the side track was a large steel car, and that it was covered all over with frost, variously estimated to be from a little in excess of one-sixteenth to over one-eighth of an inch in thickness; that the ground was covered all over with frost; that a thorough examination was then made of the car to ascertain if the deceased had come in contact with it, and, if so, at what point. In that connection the testimony of the deputy sheriff, perhaps, covers the testimony of practically all of the witnesses. He said: "We made a thorough examination of it"—the car. "The north side and the west end were covered with frost * * * approximately about one-eighth of an inch" in thickness. "Well, we examined the north side of the car and the west end thoroughly to see if we could find any marks where Mr. Tremelling had hit, and we found no marks whatever, either on the car or on any part of it." He said the examination "consumed the greater portion of an hour." The witness further stated that they examined the irons of the car; that the frost was on the irons, and that no "marks" were found on any part of the car. This witness also testified that tests were made as to whether, if any substance touched or came in contact with the car, it would disturb or affect the frosty coating thereon; that one could not touch the car, or any part of it, without leaving a mark in the frosty coating thereon. Indeed, the testimony is to the effect that there were no indications whatever on the car that any one, or any substance, had come in contact with it on the morning in question, before the examination was made, either on the west end or on the north side of the car. The witnesses also testified that the state of the weather was such that the frost remained intact on the car until after the examination. It was also shown that the skin was not broken or lacerated at the point where the skull of the deceased was crushed in; that there were no other bruises on the body except a few "slight

scratches," as the witnesses called them, on the face of the deceased, which, it was assumed, were caused by the sliding of the deceased from the point "X," where the deceased first struck the ground, to the point "B," where the body was found, and that in sliding some of the buttons on his vest had been torn off. The deceased was lying face down when found.

The doctor called by the plaintiff testified that the skull was probably crushed in by a blow from some blunt instrument or substance. It was also made to appear that the side track was constructed about twenty-seven years prior to the accident, and that it was maintained for that length of time at the place it was at the time of the accident; that records were kept by the defendant of all accidents since the year 1901, and that there was no record of any accident occurring similar to the one in question, or any other, at the side track in question during that period of time.

The plaintiff also produced a number of men who had been employed in the operation of trains in different parts of the country, who testified that it was customary and usual for trainmen to go down the side of cars when in motion to keep a "lookout" for hot boxes. There is other evidence, but, in our judgment, the foregoing fully and fairly reflects the record.

Upon the foregoing facts the defendant requested the district court to instruct the jury to return a verdict in its favor upon substantially the following grounds: (1) Because no negligence was shown on the part of the defendant; (2) that the cause of the death of the deceased is left to mere conjecture; and (3) that the deceased assumed the risk as a matter of law. The court refused to so instruct the jury, but submitted the case to them upon the evidence. The jury returned a verdict in favor of the plaintiff, upon which the court directed judgment to be entered, from which the defendant appeals.

A number of errors are assigned.

In view of the facts and circumstances, the evidence respecting defendant's negligence is quite meager. Assuming, how-

ever, as we do, that there was sufficient evidence to carry the case to the jury upon both the question of defendant's negligence and upon the assumption of risk on the part     1, 2 of the deceased, yet that, standing alone, is not sufficient to sustain the verdict.   In order to recover, the plaintiff was required to establish by a preponderance of the evidence (a) that the defendant was negligent in one or more of the acts charged in the complaint, and (b) that said negligence was the proximate cause of the death of the deceased.   The serious question in this case is, is there any substantial evidence in the record from which it may be legitimately inferred that the death of the deceased was caused by his body coming in contact with the car standing on the side track?   After a careful reading of the whole evidence contained in the bill of exceptions, we confess our inability to discover any such evidence.   The rule is well established that where an accident occurs through the alleged negligence of one person which results in injury or damage to another, and the injured person seeks to recover damages, and it is made to appear that the accident may have been occasioned by one of two or several causes, and that the person complained of is responsible only for one of them, then the burden is on the plaintiff to show that the accident and resulting damages were produced by the cause for which the person complained of is responsible, and in case of a failure to establish such fact the plaintiff must fail in the action.   In 29 Cyc. 625, it is said:

"The evidence must, however, do more than merely raise a conjecture or show a probability as to the cause of the injury, and no recovery can be had if the evidence leaves it to conjecture which of two probable causes resulted in the injury, where defendant was liable for only one of them."

If the probabilities are equally balanced that the accident was produced by a cause for which the defendant is responsible or by one for which he is not, the plaintiff must fail. *Searles* v. *Manhattan Ry. Co.*, 101 N. Y. 661, 5 N. E. 66; *James* v. *Robertson*, 39 Utah, 414, 113 Pac. 1068.   If, in view of the whole evidence, it is just as probable that the deceased fell from the moving train, and that the back of his head

struck the hard, frozen ground, and in that way his skull was crushed, as testified to by the witnesses, as it is that he came in contact with the freight car standing on the side track, and that his skull was crushed by the impact, as contended by plaintiff, then the cause of his death is a mere matter of conjecture. We fail to find any evidence in this record from which it may be deduced or inferred that the deceased came in contact with the freight car standing on the side track and that he was knocked from the moving train by it. The inference is quite as strong, if not stronger, that the deceased in some way slipped and fell from the moving train, or that his handhold loosened and that he fell to the ground. Indeed, by keeping in mind the whole evidence, the inference that he was caused to fall by reason of the cause last mentioned is more rational and more probable than that he was knocked from the moving train by the standing freight car. If there had been no frost on the standing car, which of necessity must have been disturbed in case any person, object, or thing came in contact therewith, there would be at least some basis for the inference contended for by plaintiff. Where, however, as in this case, the inference is based upon an assumed or supposed fact, which fact the evidence shows did not exist, then the inference is left without support. The rule in that regard is stated by the Supreme Court of Oregon in the case of *Goss* v. *Northern Pac. Ry. Co.*, 48 Or. 439, 87 Pac. 149, in the headnote, thus:

"Where the evidence of negligence is entirely inferential, and the testimony for the defendant is clear and undisputed to the effect that there was no negligence, the plaintiff's case is overcome as a matter of law, and it becomes the duty of the judge to take the case from the jury."

The rule is applied in *Christensen* v. *Railroad*, 35 Utah, 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159, and in *Richards* v. *Railroad Co.*, 41 Utah, 99, 123 Pac. 933. It must not be assumed, however, that the rule thus stated can be given general application. Indeed, the rule can rarely be applied, since the evidence generally is such that it is the exclusive province of the jury to draw the inferences there-

from. The case at bar, however, presents a typical case where the rule is applicable. Here the plaintiff relies entirely upon an assumed fact, namely, that the deceased came in contact with the freight car which was standing on the side track. The witnesses produced both by the plaintiff and the defendant, however, all agree that the car standing on the side track was covered all over with a thick coating of frost; that any person, object, or substance touching the car at any point or place interfered with the coating of frost and disturbed it so that it was easily seen by any one that some one or something had come in contact with the car; that after careful examination, lasting a considerable length of time, no mark of any kind was discovered indicating that any one or anything had come in contact with the car at any point, and that experiments were made to determine whether, if any one or anything of substance had touched the frosting on the car, evidence of the fact would appear in the frosting. The assumed fact that the body of the deceased came in contact with the car was thus clearly, if not conclusively, negatived. Moreover, it is clear that the skull of the deceased could have been crushed by a fall from the moving train upon the frozen ground, precisely as it was shown by the evidence to have been crushed. Indeed, if the effect of the natural forces are kept in mind, it is quite probable that if the deceased had come in contact with the standing car while he was on the moving train, that by the force of the impact his body would have been thrown away from the standing car and would not have fallen to the ground between the two tracks so near the standing car, as indicated by the evidence. From all the facts and circumstances the inference is certainly as rational, and quite as probable, that the deceased fell backward from the moving car, and in doing so struck the hard ground with the back of his head, and that the momentum of his body, which was imparted to it by the fast moving train, caused it to turn over and slide, precisely as indicated by the evidence, as it is that his body came in contact with the car standing on the side track. The cause of his death is therefore left to conjecture merely, and in view of that fact the judgment cannot prevail.

The following cases are all well considered, and in all of them it is held that where as here, the proximate cause of the injury is left to conjecture, the plaintiff must fail as a matter of law: *Sorenson* v. *Menasha P. & P. Co.*, 56 Wis. 388, 14 N. W. 446; *Kearns* v. *So. Pac. Ry. Co.*, 139 N. C. 470, 52 S. E. 131; *Monson* v. *La France Copper Co.*, 39 Mont. 50, 101 Pac. 243, 133 Am. St. Rep. 549; *Stratton* v. *C. H. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. Rep. 881; *Hansen* v. *Seattle Lumber Co.*, 31 Wash., 604, 72 Pac. 457; *White-house* v. *Bryant, etc., Co.*, 50 Wash. 563, 97 Pac. 751; *Glancy* v. *McKees*, 243 Pa. 216, 89 Atl. 972; *Puckhaber* v. *So. Pac. Ry. Co.*, 132 Cal. 363, 64 Pac. 480; *Edd* v. *Union Pac. Coal Co.*, 25 Utah, 297, 71 Pac. 215. In the last case cited the following language is adopted and approved:

"'When an injury may have come from either one of two causes, either of which may have been the sole proximate cause, it devolves on the plaintiff to prove by a preponderance of the evidence that the cause for which the defendant was liable was culpable and the proximate cause.''

Numerous other cases could be cited to the same effect, but it is not necessary to do that. It is contended, however, that the case of *Lewis* v. *Rio Grande Western Ry. Co.*, 40 Utah, 483, 123 Pac. 97, is decisive of this case. We are unable to concur in that view. In that case it was clearly estab- lished that the railroad company was negligent in operating its train at a rate of speed prohibited by ordinance, and that it had failed to give any warning signals in approaching a public crossing. The deceased was found dead at such crossing, toward which he was approaching when last seen, just before midnight. The train passed over the crossing where the deceased was found just about midnight, and his watch, which was found near him, had stopped at midnight. The controlling question in that case was whether the evidence was sufficient to support the verdict against the contention that the death of Lewis was caused by his own carelessness in attempting to cross the track at the crossing aforesaid. It was held that, in view of all the evidence, the presumption that Lewis was in the exercise of due care in attempting to

cross the track at the public crossing was sufficient to justify the verdict of the jury. Although in the case at bar the question of contributory negligence on the part of the deceased was not a defense to the action, but was material only in determining the amount of damages, yet the presumption that he was in the exercise of due care for his own safety is precisely the same as in the Lewis Case. The legal effect of the presumption in this case is, however, in favor of and not against the defendant. It will not be presumed that the deceased, in broad daylight, unnecessarily exposed himself to the danger of being struck by the car standing on the side track, when he could easily have avoided the danger. Such would be the presumption to ward off contributory negligence, and such is the presumption in this case. In the face of that presumption, therefore, the case is made still stronger for the defendant.

Again, plaintiff proved by competent evidence that the deceased was pursuing the usual method in keeping a "lookout" for the expected hot box. This evidence was intended, no doubt, to show that the deceased was not guilty of contributory negligence. If, therefore, he was negligent, it was not because he got down on the side of the car, but because of some other act of carelessness, such as leaning out too far from the moving car. The presumption, however, is that he was not negligent in that respect any more than in any other; and hence it cannot be presumed, without some evidence, either direct or inferential, that he exposed himself to unnecessary dangers.

It is earnestly insisted, however, that we must take judicial notice of the laws and forces of nature, and hence that it is a physical fact that frost on windows and other substances is replaced in case it is disturbed. The familiar experience with windows in dwelling houses and in railroad cars is referred to. The phenomenon alluded to is, however, produced by the difference in temperature of the atmosphere between the inside and the outside of the dwelling house or car. If the atmosphere is at the same temperature on both the inside and outside of the dwelling house or car, the frost-

ing will not be replaced after it is disturbed. The replacement is due to the difference in the temperature, as before stated, and to the moisture contained in the atmosphere. The undisputed testimony of plaintiff's own witnesses is to the effect that it was no longer freezing at about the time the accident happened. In view of that, the frosting on the car, if disturbed, would not be replaced, just as it was assumed by the witnesses who examined the car. That, therefore, merely adds another element to the uncertainty of the true cause of Tremelling's death.

We desire to add, before leaving this subject, that although it were assumed that the deceased came in contact with the standing car, yet that would not necessarily establish the proximate cause of his death. Suppose he had come in contact with the car after he had lost his hold on the freight car on which he was riding, the proximate cause then would be the loosening of his handhold and falling from the moving car. Coming in contact with the standing car would thus not constitute the proximate cause any more than the falling on the hard ground or on the ties, or any other object, would constitute the proximate cause of his death. We may therefore regard the evidence from any point of view, and the result is always the same, namely, that the cause of death is left wholly to conjecture.

The Lewis Case, as well as many other cases decided by this court, conclusively shows that, if there is any substantial evidence in support of the verdict, this court will not invade the province of the jury and pass on questions of fact. Where, however, as here, the verdict rests on mere conjecture, we cannot, and ought not, seek to escape the responsibility of setting it aside. Where there is no substantial evidence in support of the findings or verdict, then, as a matter of law, the findings or verdict must fail.

One or two of the other assignments may be attributed to the fact that the district court refused to instruct the jury to return a verdict for the defendant as requested, and for that reason need no special consideration.

The assignments relating to the admission and exclusion of evidence are not tenable.

For the reasons hereinbefore stated, the judgment is reversed, and the cause is remanded to the district court of Salt Lake County, with directions to grant a new trial. Appellant to recover costs on appeal.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.